In the Matter of the Estate of JOHN FEWER, Deceased.

Surrogate's Court, Kings County, December 16, 1941.

*Connolly & Frey* [*Edward J. Connolly, Anthony Cinao* and *Louis Costagliola* of counsel], for Nellie Fewer, individually and as administratrix, etc., petitioner.

*Albert J. Hiers,* for the New Amsterdam Casualty Company, surety on the bond of the administratrix, objectant to decree.

*Stewart Maurice,* for the National Surety Corporation, surety on the bond of the administratrix, objectant to decree.

*John T. Waters,* special guardian for John Fewer, Mary Fewer, Muriel Fewer and William Fewer, infant distributees.

*Edmund J. Pickup,* for Harry S. Austin, former attorney for the administratrix.

WINGATE, S. It is, of course, a familiar legal principle that a person in his fiduciary capacity is frequently deemed to constitute a diverse juridical entity from that which he enjoys as an individual. (*Rathbone* v. *Hooney,* 58 N. Y. 463, 467; *Collins* v. *Hydorn,* 135 id. 320, 324, 325; *Leonard* v. *Pierce,* 182 id. 431, 432; *Williamsburgh Savings Bank* v. *Bernstein,* 277 id. 11, 16; *Williams* v. *Fischlein,* 144 App. Div. 244, 245; *Pardee* v. *Mutual Benefit Life Ins. Co.,* 238 id. 294, 296; *Nagel* v. *Nagel,* 242 id. 845.) This conception is, however, not capable of extension to the point where an individual distributee may be permitted in that capacity to surcharge himself as administrator for misfeasances committed as a fiduciary.

The process of judicial settlement of the accounts of a fiduciary calls upon the incumbent to justify his dealings with the *rem* constituting the estate of the decedent. The accountant, as an individual, holds the assets of the estate as trust property but must answer for their proper administration since, although he personally holds legal title, he is accountable therefor to those who are the ultimate beneficial owners. If he fails to account to the reasonable satisfaction of those for whom he is a fiduciary, a decree of surcharge

will be entered against him as an individual, and if such judgment be not paid, he, himself, and not merely his fiduciary uniform, will be subject to incarceration for his default.

The reason for the foregoing observations is that in this estate the accountant received a total of $58,271.83. She is entitled to certain credits against this sum, namely, $1,438.37 for disbursements of litigation, $18,944.49 for her attorney's fee, $513 for funeral and attendant expenses, $343.08 for premiums on bonds, and for commissions, of which more hereafter. These credits, excluding commissions, aggregate $21,238.94, leaving her chargeable with $37,032.89, which, after deduction of the expenses of this accounting and of commissions, if any, is distributable one-third to her and two-thirds to the children of the decedent.

The difficulty presently existing arises from the fact that the administratrix paid over to her attorney the sum of $41,619.21 from the estate assets and satisfied certain of the allowable funeral expenses from her individual funds. In the decree presented by her she seeks in effect as an individual to charge herself in her fiduciary capacity with the receipt of these individual funds and objects to the credit to her in her fiduciary capacity, as a payment on account of her individual distributive share, of the amount by which the payment to her attorney exceeded the sum which has been determined to have been justly due him.

The obvious purpose of her efforts is to increase the amount of her fiduciary surcharge with the ultimate object of seeking to lay the foundation for a recovery against the sureties on her official bond. The legal answers to these two positions, whereas diverse, both establish the unsoundness of her contentions.

So far as concerns the excessive payment to the attorney, the law, in the vast majority of instances, is unconcerned with the particular method of expenditure of estate funds which a fiduciary has improperly diverted from their legitimate objects. If such misuse has occurred, the law stops at the point of the determination of the amount of the diversion and holds the accountant liable for the sum which has improperly been expended. This having been ascertained, the first step in the fixation of the adjudicatable devastavit is to apply against the diverted fund any credits to which the accountant would otherwise have been entitled in his own right. This action is predicated upon the fundamental principle of surrogate law that no beneficiary may claim any distributive rights from an estate until he has satisfied all of his obligations to it. (*Smith* v. *Kearney*, 2 Barb. Ch. 533, 547–549; *Clapp* v. *Meserole*, 1 Abb. Dec. 362, 365; *Stagg* v. *Beekman*, 2 Edw. Ch. 89, 92; *Ferris* v. *Burrows*, 34 Hun, 104, 107; *Matter of Flint*, 120 Misc. 230, 232; affd., 206 App. Div. 778.)

This rule is even more firmly rooted in considerations of public policy when the question arises in respect of defalcation by a fiduciary. In such a situation, it is held that where such a functionary possesses any distributive rights in the estate which has suffered by his improper acts or omissions they are deemed automatically applied in reduction of the damage which he has caused, on the theory " that he must be regarded as having received his share in whole or in part by anticipation." (*Matter of Van Nostrand,* 177 Misc. 1, 8, and authorities cited.) It follows in the present instance that any sums to which the accountant would otherwise have been entitled must be deemed to have been *pro tanto* paid by the legally unjustified excessive payments which she made to her attorney, to the extent that they may be necessary to repair her devastavit in this regard.

Turning to the method of treatment of the sums for funeral expenses which the administratrix paid from her individual funds, the contention that these should appear as a debit in her account overlooks the fundamental theory that in the making of estate disbursements, a fiduciary is deemed to make payment primarily from his own funds, for which, in so far as legally permissible, he will be reimbursed upon his accounting. (*Shaffer* v. *Bacon*, 35 App. Div. 248, 251; affd., 161 N. Y. 635; *Matter of Rosenberg*, 169 Misc. 92, 95.) This conception was not altered by the addition of section 2692 to the Code of Civil Procedure (now Surr. Ct. Act, § 222) in 1914, which authorized the fiduciary to pay " legal and proper expenses of administration necessarily incurred " from estate funds. This merely authorized borrowing by the estate fiduciary at his peril, and subject to a possible future determination that such borrowing constituted a devastavit if the expenditure was subsequently determined to be improper as an estate charge. (*Matter of Rosenberg, supra,* 96; *Matter of Ziegler,* 170 Misc. 748, 751; Butler, N. Y. Surr. Law & Prac. § 1336.)

Here no such borrowing occurred. The administratrix merely made the payment from her own funds, as on theory she was legally bound to do. As the expenditure was proper she is entitled to a credit but no entry may be made on the debit side of the account other than the obligation to the third party which was actually paid.

In furtherance of her apparent effort to swell the surcharge for which her surety may be liable, the administratrix, while claiming commissions on the accounting, has now purported to waive them and an issue has been raised as to the effectiveness of this act on her part.

Whereas, under ordinary circumstances, such a waiver is permissible, the theory upon which such an act may be sustained

is that it is a relinquishment of a right which belongs wholly to the fiduciary himself. Consonant with the rule, hereinbefore discussed, that no person may receive any payment from an estate until he has satisfied all of his obligations to it, it is well established that commissions may not be paid until any obligations of the fiduciary to the estate have been satisfied, and that, if allowed, they are subject to diminution or total appropriation for the satisfaction or reduction of a surcharge against the fiduciary. This is merely a logical extension of the previously noted principle. It follows that the commission rights of the accountant are subjected to a lien in favor of the surcharge, which the fiduciary may not destroy by a purported waiver.

When the realities of waiver here attempted are considered, it is furthermore obvious that the waiver, if effectuated, would accomplish a *pro tanto* assignment of these commissions to the children of the administratrix to the detriment of the surety. It has been the uniform determination that any attempted assignment of commissions prior to their judicial allowance is contrary to public policy and void. (*Matter of Worthington*, 141 N. Y. 9, 12; *Matter of Jacobs*, 154 Misc. 362, 364; *Colonial Bank* v. *Sutton*, 79 id. 244, 245.)

Obviously, interest is allowable to the infants on their distributive shares not only for the period computed by the referee but for the subsequent interval up to the date of entry of the decree; equally, obviously, the account, as originally filed, must be supplemented so as to disclose subsequent receipts.

Enter decree on notice in conformity herewith.