form of the reservation; the intent of the grantor in making the reservation and of the grantee in receiving the deed with the reservation being apparent.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., and LAUGHLIN, J., concur.

McLAUGHLIN, J. (dissenting). I am unable to concur in the prevailing opinion. The easements appurtenant to the property conveyed were inseparable from it. The conveyance necessarily carried with it the easements, notwithstanding the attempted reservation. As to the damages for the impairment of the easements which had accrued at the time the conveyance was made, these could be reserved as between the grantor and grantee, and, if the latter thereafter had a recovery for the same, he would hold the same in trust for the former, and this upon the theory that the same was a part of the consideration. But as to the damages which accrued after the conveyance, they could not be reserved any more than could the easements, because this, in effect, would destroy the conveyance itself.

I do not understand that any different doctrine was laid down in the cases cited in the prevailing opinion. Here the plaintiff seeks to recover what the railway companies paid to the defendants for the right to operate their railroads in front of his premises, and for damages which had accrued to him by reason of the impairment of his easements of light, air, and access subsequent to his acquiring title. In the amount thus paid the plaintiff had no interest, not only because he could not, by reason of his conveyance, reserve such right, but also because of the wording of the reservation itself.

I therefore vote to affirm the judgment.

CLARKE, J., concurs.

---

In re STEVENS et al.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. APPEAL—PARTIES AGGRIEVED—TRUSTEES.

Where a surrogate allowed grossly extravagant compensation to the special guardians of certain minors for conducting and prosecuting an appeal to the Appellate Division from the surrogate's order settling the accounts of certain trustees, and directing that such compensation be paid out of the minors' shares of the fund to be distributed, the trustees were "aggrieved," within Code Civ. Proc. § 2568, authorizing appeals from surrogate's orders by any party aggrieved.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Appeal and Error, §§ 947–952.]

2. POWER OF SUPREME COURT—INFANTS—PROTECTION OF PROPERTY.

The Supreme Court has inherent power requisite to protect the property and estates of minors, even as against the decree of an inferior court.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Infants, §§ 64–67.]

3. APPEAL—DISCRETIONARY ORDERS—REVIEW.

While the Appellate Division has no jurisdiction, on appeal from an order allowing compensation to the special guardians of certain infants, to make such allowance as should have been made, it has jurisdiction to set aside an order made by the surrogate, which in its opinion constitutes an abuse of discretion.

4. INFANTS—SPECIAL GUARDIAN—COMPENSATION.

On a judicial accounting of certain trustees, the court appointed special guardians for certain minors. The facts were undisputed, and the questions of law, while not free from doubt, were neither unusual nor extraordinary. For their services prior to decree in the Surrogate's Court such guardians had been allowed $15,000 for work covering a period of a little less than 15 months, and for an appeal to the Appellate Division, which required little or no additional research, and where the guardians' contentions were unanimously rejected, the surrogate allowed them $7,500 more. It also appeared that a further appeal to the Court of Appeals would be required to settle the controversy, which, however, it was decided would result in comparatively small benefit to the infants. *Held.* that the order granting such allowance for the appeal to the Appellate Division was excessive, and an abuse of the surrogate's discretion.

Kruse, J., dissenting.

Appeal from Surrogate's Court, Chautauqua County.

Judicial settlement of the accounts of Frederick H. Stevens and another, as surviving trustees for Jesse Brooks Nichols and others, under the will of Julia A. Brooks, deceased. From so much of an order as directed payment from the share of Jesse Brooks Nichols and Kathleen and Gretchen Stevens of the sum of $5,000 to Clare A. Pickard, and $2,500 to Fred Greiner, as special guardians of such minors for their services in taking and prosecuting an appeal to the Appellate Division, and from a decree settling the accounts of the trustees by the Surrogate's Court, the trustees appeal. Reversed.

The proceeding was commenced by the surviving trustees under the will of Julia A. Brooks, deceased, on the 17th day of November, 1903, by filing their petition, duly verified, in the office of the clerk of the Surrogate's Court of Chautauqua County, praying for a judicial settlement of their accounts. Citations were thereupon duly issued, returnable on the 27th day of January, 1904, at which time the respondents were duly appointed special guardians of the infants represented by them, respectively. Thereafter such special guardians filed objections to the accounts presented by such trustees. The issues raised by such objections were tried out before the Surrogate's Court, and the objections interposed by the special guardians were held not to be tenable, and the accounts of such trustees, up to and including December 19, 1904, were settled practically as presented by them. The questions involved are fully set forth and discussed in the opinion of the learned surrogate before whom such issues were tried, which is reported in 95 N. Y. Supp. 297. The decree of the Surrogate's Court overruling the objections raised by the respondents, and determining the other matters in controversy, was finally entered on the 15th day of April, 1905. Thereafter, and on the 23d day of May, 1905, an appeal was taken from such decree by each of such special guardians to this court. Such appeal was argued at the January, 1906, term, and a decision unanimously affirming the decree of the Surrogate's Court was handed down at the opening of the March term following. 98 N. Y. Supp. 28. The questions which were considered to be involved upon that appeal are fully set forth in the opinion of Mr. Justice Williams, unanimously concurred in. The brief presented upon such appeal by the present respondent, Pickard, comprised 31 pages, about 21 of which were devoted to a discussion of questions of law. The brief of the other respondent comprised about 10 pages, 9 of which were taken up with a state-

ment of the facts. In the brief of Mr. Pickard only cases decided by the Court of Appeals or Appellate Division were cited, and we think it fair to assume that all of those were upon his brief submitted to the surrogate, for in his affidavit he states that he had made a most thorough and exhaustive examination of all the questions involved in preparing to sustain his contention in that court. Upon the brief of the other respondent only two Court of Appeals cases were referred to, both of which were fully discussed in the brief of his co-appellant. Attention is called to these facts only because any and all services rendered by the respondents in preparing for the trial of the issues raised before the Surrogate's Court, and in the preparation of their briefs for submission to that court, which we are informed was most laborious, had been fully paid for. For such services, pursuant to a decree of the Surrogate's Court previously made, the respondent Pickard had been paid $10,000, besides all expenses and disbursements incurred by him, and the respondent Greiner had been paid $5,000, in addition to his expenses and disbursements; so that upon the facts the question is presented whether or not an allowance to the respondents of $5,000 and $2,500, respectively, for their services in taking and conducting such appeal to this court, was improper, and such as to require a reversal of so much of the decree as is appealed from.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

George A. Lewis, for appellants.
Frank W. Stevens, for respondents.

McLENNAN, P. J. It may be assumed that the Surrogate's Court had authority in its discretion to make suitable allowances to the special guardians of the infants represented by them respectively, payable out of their respective shares of the estate, for the services rendered by them in taking and prosecuting the appeal in question; but if such allowances were grossly excessive, and such as to indicate an abuse of discretion, it becomes the duty of this court to reverse the decree, and to that extent protect the estate of such infants. When the decree appealed from was made, it appeared that $15,000 had already been allowed to such guardians for services rendered by them in this proceeding on behalf of such infants, in addition to the expenses, costs, and disbursements incurred, the amount of which does not appear; and all such expenditure, so far as it has yet been made to appear, has not resulted in any advantage to such infants, or either of them. Whatever services were rendered upon the hearing before the Surrogate's Court, and prior to the entry of the decree settling the trustees' accounts were fully paid for, and, as appears by the affidavits, the investigation made by the respondents preparatory to and upon such hearing, both as to the law and the facts, was most exhaustive and complete; so much so that it is apparent that the proper presentation of the appeal to this court could not have required very much additional research.

An affirmance of the decree appealed from involves the assent on the part of this court to the proposition that the respondents have fairly and reasonably earned $7,500 for services rendered in taking and prosecuting the appeal in question, although practically every question involved had been presented to and argued before the Surrogate's Court, and where the appeal to this court practically involved only a repetition of the points urged before that court. In passing it is proper to call attention to the fact that, if there be added to the allowances made in

the decree appealed from the costs and disbursements directed to be paid out of the shares of the estate of such infants, respectively, it will be seen that such appeal has cost such infants the sum of at least $9,-313.66. If the allowances complained of are approved, there will have been paid to the special guardians of the three infants named out of their respective shares the sum of $22,500 as compensation for the services rendered by them as special guardians in this proceeding, in addition to all costs, disbursements, and expenses made or incurred by them; and we are informed in the moving papers that in the opinion of such guardians the case must yet go to the Court of Appeals for final determination. The allowances which may be made for services rendered and expenses incurred in connection with such appeal to the court of last resort cannot, of course, at this time be even estimated. If $7,500 is a proper compensation for bringing and prosecuting an appeal to this court from a decree of the Surrogate's Court, which resulted in no advantage to the client, where every question involved had been previously investigated, and such investigation paid for, what may we expect the charge to be when an appeal is taken to the highest court of the state, even although the determination of that court is equally barren of results to the clients? In determining the amount of compensation which an attorney should receive for legal services rendered by him to a client in any litigation, it is proper to consider the advantages resulting to such client because of such services. In this case the litigation has so far been wholly barren of any results of advantage to the clients. We should also consider the amount of time spent by the attorney in doing the work for which compensation is asked. In this case the allowances made give to one special guardian $20 for each day, including Sunday, between the time when the decree appealed from was made and the argument of such appeal in this court, and to the other special guardian $10 per day for each of said days. But previously they had received $15,000 for making investigation and research of the questions involved upon such appeal. They had been paid for such investigation and research by a previous decree of the Surrogate's Court $15,000, which covered a period of a little less than 15 months from the time they were appointed as special guardians until the decree was entered from which the appeal in question was taken; so that the respondents, by the allowances made, in case the decree appealed from is affirmed, will have received more than $1,000 per month as compensation for their services from the time they were appointed special guardians of the infants named until the submission of their appeal to this court, and this in addition to their costs, expenses, and disbursements, all, of course, made payable out the shares of the estate to which the infants represented by them were entitled.

In fixing the compensation of attorneys for services rendered in any litigation, the amount involved may properly be considered. In the case at bar, while the amount of the trust estate was large, it is apparent that howsoever the questions raised by the respondents' appeal might be determined was of comparatively little importance to the infants represented by them. It is unnecessary, and would not be appropriate at this time, to enter upon a discussion of those questions, or as to how the infants would have been affected had the contention of the

respondents prevailed. Suffice it to say that, so far as appeared before the Surrogate's Court, such infants, by the contest made by their special guardians, had no interest involved except such as was conceded by their trustees; and, as we have seen, that view of the case has been unanimously affirmed by this court. In other words, the special guardians of such infants assumed to test the correctness of the disposition of the trust estate proposed to be made by the surviving trustees under the will of Julia A. Brooks, deceased, which contest, if the allowances in question shall be sustained, will have entailed a loss to such infants of from $22,500 to $40,000, without any possible advantage to them, unless, as is suggested, an appeal may be taken to the Court of Appeals, and in that court the judgment of this court and the decree of the Surrogate's Court shall be reversed, and, in case such reversal should be had, the advantage resulting to the infants represented by the respondents would hardly equal the expenses incurred. We appreciate, also, that the compensation paid to the attorney for services rendered by him should depend somewhat upon the novelty or intricacy of the question of law involved. In this case, while undoubtedly the question of law involved is not free from doubt, and presents many interesting features, it cannot be said to be in any sense unusual or extraordinary, and the contention of the respondents was rejected unanimously by this court.

On applying all these tests to the determination of what compensation should be awarded to an attorney for services rendered to a client, we find in this case no advantage resulted to the client; also that, considering the days possibly spent, the charge is exorbitant. The amount involved in the litigation in no sense justifies the allowance. We think, no such intricate or difficult question of law was presented by the petition of the surviving trustees and the objections thereto by the respondents as to require such legal services as to justify the allowances made. The facts all being admitted or stipulated, leaving only a bare question of law to be determined, the work necessary to its proper solution could well be done for one-third of $22,500, the allowances already made to the respondents in this case, in addition to all costs, disbursements, and expenses incurred by them.

Upon the facts, we are constrained to hold that the Surrogate's Court abused its discretion in the premises; that there was absolutely no justification for allowing $7,500 as compensation for taking and conducting an appeal to this court from the decree of the Surrogate's Court, when, as it appears, the respondents had previously been paid for all services rendered by them, and which made or ought to have made them competent to present the issues to this court without additional research or investigation.

It is, however, urged, that this court has no power to review the action of the Surrogate's Court in making the allowances in question upon appeal by the trustees, because such trustees are not "aggrieved," within the meaning of section 2568 of the Code of Civil Procedure. The argument is, in effect, that no matter how unjustly and improperly the estates of their respective cestuis que trustent may have been depleted by the allowances made, such trustees are powerless to prevent such spoliation provided the Surrogate's Court authorizes the same. Such argument is based upon the suggestion that such trustees as such

have no concern as to where the estate of which they are trustees shall go, or how it may be distributed.

We think the proposition is fallacious, and that the numerous cases cited by the respondents are not authority for their contention. Each of the cases cited only lays down the rule that trustees may not prosecute an appeal from a decree which does not affect them, and where all of their cestuis que trustent are of full age, and competent to manage their own affairs, and assent to or acquiesce in such decree.

We think no case can be found in which it has been held that where a trustee of an infant's estate is improperly and by an abuse of discretion directed by a Surrogate's Court to pay over the funds belonging to such estate, that such trustee has no right of appeal to the Supreme Court of this state, to the end that such abuse of discretion may be corrected. To illustrate the principle contended for by the respondents: Suppose the Surrogate's Court had made allowances to the special guardians, the respondents upon this appeal, for the entire amount of the respective shares of the estate of such infants, amounting, we will assume, to $100,000, more or less. Is there no way by which such a palpable abuse of power could be corrected? The Supreme Court has ample and inherent power to prevent such wrong affecting the property of an infant, and so although the special guardian of such infant may be the instigator of such outrage. Thus far we have only considered the power of the Supreme Court to prevent or rectify a wrong done to the property or estate of an infant. We consider that the Supreme Court has absolute power, subject only to review by the Court of Appeals, to protect the person and estate of infants and other incompetents, and that upon appeal to this court an abuse of discretion exercised by any inferior court to the detriment of such infant may be corrected. The Supreme Court of the state of New York has the inherent power requisite to protect the property and estates of its wards, and so even against the decree of an inferior court, which tends to jeopardize or destroy the interest of such ward. We think no citation of authority is necessary to support the proposition that, if it comes to the knowledge of the Supreme Court by appeal by a trustee that the estate of an infant or other incompetent person in his hands is about to be plundered, whether under and by virtue of a decree of a Surrogate's Court or otherwise, the Supreme Court has the power to prevent the consummation of such wrong. Under the circumstances disclosed by the record in this case, we assume to exercise such power, and so notwithstanding it is suggested that the infant represented by the chief respondent will very soon be of full age, is acquainted with the circumstances of this appeal, and does not protest. Such infant, until he reaches his majority, is, so far as legal principles are involved, the ward of this court the same as if of tender years, and we know of no rule which should be applied for the protection of the estate of the one and disregarded as to the other.

It is also urged on behalf of the respondents that the allowances made by the learned Surrogate's Court were a matter of discretion, and for that reason this court has no power to review. Much of what we have previously said applies to this contention. We, however, admit that this court may not review the discretion exercised by a Surrogate's

Court in a case of this character, the same as it might the exercise of discretion by a special term of the Supreme Court. This court cannot make the order; it cannot make the allowance which should have been made in this case. Yet we think that where the decree made by the Surrogate's Court involves an abuse of discretion, we have ample power to vacate and set aside the same.

In the Matter of Selleck, 111 N. Y. 284, 290, 19 N. E. 66, 69, it was said:

"I think, however, that we may properly hold that the exercise of discretion by the surrogate is somewhat qualified by the words in section 2557, 'as justice requires,' and that the presence of these words would authorize the interposition of an appellate court where there had been an abuse of discretion and a violation of justice. Broad as the language of the section is, I think the Legislature should not be deemed to have intended that there should be no redress in cases of an abuse of discretion by the surrogate, and that that view finds support in the words quoted."

In conclusion we state that in our opinion the allowances made are grossly excessive, and involve an abuse of discretion by the Surrogate's Court for the reasons: First, that when such allowances were made there had not been a final determination of the controversy; second, because practically all the work necessary in order to present the appeal in question to this court had been done, and had been previously paid for by allowances to the respondents made by the Surrogate's Court before the appeal in question was taken; and, third, because it is apparent to us that for the services necessarily rendered in the taking and presentation of such appeal to this court the compensation allowed was grossly excessive.

In our opinion no allowance of any substantial amount should have been made for taking and conducting the appeal in question until the issues therein involved were determined by the Court of Appeals, where the respondents assert the case must go for a final determination of the rights of the parties. It follows that so much of the decree as is appealed from should be reversed, with costs to the appellants payable out of the estate.

Decree so far as appealed from reversed, with costs to appellants payable out of the estate. All concur, except KRUSE, J., who dissents upon the ground that the allowance being payable out of the fund of the infant, neither the trustee nor any other party interested in the estate is aggrieved thereby, except the infant, and neither he nor his general guardian objects thereto.