In the Matter of the Estate of IDA C. POTTS, Deceased.

Surrogate's Court, Columbia County, June 12, 1924.

**Executors and administrators — counsel fees — proceedings under Surrogate's Court Act, § 231a, to determine compensation of petitioners as attorneys for legal services rendered decedent's estate — size of estate, nature of its assets, presence or absence of litigation and relationship of beneficiaries to decedent considered in fixing value of legal services in settlement of estates — services in behalf of estate, valued in excess of $2,000,000, included much actual and threatened litigation — corporation created since death of decedent chief residuary legatee — compensation fixed at $80,000.**

The generally accepted rule in fixing the value of legal services in the settlement of estates is to consider, in addition to the time occupied by counsel and the difficulty of the questions involved, the size of the estate, the nature of its assets, the presence or absence of litigation and the relationships of the beneficiaries to the decedent.

Accordingly, $80,000 will be allowed as compensation to attorneys for legal services rendered the estate of a decedent in a proceeding to determine their com-

pensation where it appears that the estate was slightly in excess of $2,000,000; that in addition to the usual services performed by attorneys in such cases there was much actual litigation and considerable threatened litigation and matters of controversy incident to the administration of the estate for upwards of two years; and that the chief residuary legatee was a corporation created since the death of the decedent.

PROCEEDING to fix and determine compensation of attorneys.

*John L. Crandell,* for Chace Brothers and R. Monell Herzberg, petitioners.

*Mortimer B. Patterson (Samuel B. Coffin,* of counsel), for Stephen F. Avery, executor, respondent.

WHITBECK, S.   This proceeding is one instituted under section 231-a of the Surrogate's Court Act to fix and determine the compensation of the petitioners, as attorneys, for legal services rendered to the estate of this decedent or rendered to Stephen F. Avery, executor of the said decedent. Both the petitioners and the respondent have submitted considerable testimony touching upon the nature and extent of the services rendered and a number of experts on either side have also expressed their opinions as to the value of the services rendered.

The estate of this decedent which has come to the hands of the executor is about or slightly in excess of $2,000,000, the greater part of which passes to the residuary legatee, the corporation created since the death of decedent and known as Potts Memorial Hospital, Inc.   The petitioners all performed legal services for this estate during the entire period of administration from the death of the decedent in November, 1921, up to December, 1923, a period of slightly more than two years.   These services consisted of the usual ones performed by attorneys in such cases, including the probate of the will, the taking of the inventory, the marshaling of the assets, the state and federal tax proceedings and tax proceedings in other states.   In addition to these usual services there was much actual litigation and considerable threatened litigation and matters of controversy.   There appears to have been difficulty in the incorporation of the hospital corporation due largely to local opposition, in fixing the site for the proposed hospital in the town of Livingston in this county and an appeal was had to the appeal board of the state health department, which sustained the executor in the location of the site chosen.   A rejected claim of a very considerable amount led to the commencement of an action on said claim in the Supreme Court, and while this action never came to trial it was on the calendar for two terms and the petitioners state that they were ready for trial at both terms.   Also the decedent

held a note of the Hudson City Hospital for $25,000, which the latter claimed was intended to have been a gift. After some considerable negotiation this was paid to the estate in full. A proceeding was instituted for the construction of paragraph "twenty-sixth" of the will of the decedent on July 12, 1922. This involved the larger part of the estate, being the portion bequeathed to the hospital together with the interest or accumulation thereon accruing during the interim between the death of decedent and the creation of the hospital corporation, and the taking over by such corporation of its gift. The amount involved was about $1,500,000. The construction was asked for by one or more of the next of kin who sought to have the gift set aside as illegal and void. The executor appeared in the proceeding and it was actively and earnestly prosecuted by both sides in this court and in the Appellate Division of the Supreme Court and also in the Court of Appeals. The contentions of the executor have all been sustained and the provision of the will referred to giving the residuary estate for the purpose of creating, erecting and maintaining a tuberculosis hospital will be carried out agreeably to the directions of the testatrix as contained in her said will.

Both sides have produced expert witnesses who have expressed their opinion as to the value of petitioners' services. The witnesses were lawyers of long and distinguished experience either at the bar or on the bench or both, including three former Supreme Court justices from this judicial district. The conflict of opinion among these last mentioned shows a range of divergence of opinion of $75,000, as two of them placed the value of petitioners' services at $50,000 and the third at $125,000. From among our local bar witnesses were called and testified as to their opinions of the petitioners' services, one witness placing a valuation of $50,000, while three placed a valuation of from $80,000 to $85,000. One witness from the Dutchess county bar testified that in his opinion the services were reasonably worth $110,000, while another witness from the Albany county bar placed in his opinion the value of these services at $100,000. Both were lawyers of experience and distinction. All were men of long experience and their opinions equally entitled to be given consideration. Were I to be controlled by these opinions my dilemma would be apparent, but that I am not to be so controlled has been repeatedly held. *Matter of Ellis,* 176 App. Div. 425, 429, citing *Head* v. *Hargrave,* 105 U. S. 45; *Reeves* v. *Hyde,* 14 Daly, 431; *The Conqueror,* 166 U. S. 131.

In *Gross* v. *Moore,* 14 App. Div. 353, 356, Justice Rumsey wrote as follows: "In judging of the value of legal services it is proper to consider the time occupied by them; the difficulty of the questions

involved; the nature of the service rendered; the amount involved in the litigation; the professional standing of the counsel who claim pay for services, and, to some extent, the result which has been reached. It is apparent that the last consideration can bear little, if any, upon the amount of work which has been done, but yet it is always accepted as a proper element to be considered in reaching the value of the services which have been rendered; and for that reason, while it is entitled to but little weight, yet it must not be forgotten."

Justice Rumsey's basis is of course prescribed generally for legal services but it seems to be the generally accepted rule in fixing the value of legal services in the settlement of estates to also consider the size of the estate, the nature of its assets, the presence or absence of litigation, and the relationships of the beneficiaries to the decedent, that is to say, are they closely or distantly related. This latter consideration is further recognized in inheritance taxation. Under the inheritance tax laws of our state where the estate passes to the wife or husband or to the children of the decedent, each is entitled to an exemption of $5,000, after which a tax of one per cent is applied up to $25,000. Where, however, the relationship to the decedent is that of brother or sister, no exemption is allowed and the tax is two per cent up to $25,000, while nephews and nieces, cousins and all others pay a five per cent tax with no exemption. So the size of the estate and the relationship of the beneficiaries are recognized in taxation as important considerations. Under our state inheritance tax laws where the amount passing to the husband or wife or child exceeds $25,000 the rate of taxation increases from one to two per centum on the next $75,000, with three per centum upon the next $100,000, and with four per cent upon all amounts exceeding the last mentioned amount. So to nephews and nieces and all others more distantly related to the decedent, where the amount passing exceeds $25,000 the rate of taxation increases from five to six per cent on the next $75,000, with seven per centum on the next $100,000 and with eight per centum upon all amounts exceeding the last-mentioned sum.

Under our federal inheritance tax laws where the amount of the estate exceeds $50,000 the rate of taxation is one per centum upon the next $50,000; this rate increases upon gradually increasing blocks until it reaches a rate of twelve per centum of the amount by which the net estate exceeds $1,500,000 and does not exceed $2,000,000, and finally reaches the rate of twenty-five per centum of the amount by which the net estate exceeds $10,000,000. This same theory of taxation applies to both federal and state income taxation as is familiar to many. I give this matter this consider-

able detail to show that the amount involved is a very important element in taxation and serves to illustrate that those are expected to pay who have the ability to pay.

It is true that charity is generally exempt from taxation as is the case of this hospital foundation. This exception, however, is hardly applicable to the determination of the value of personal services rendered to such a charity nor to materials furnished. So it will not be probable that the erection and maintenance of the hospital will cost less because it is charitable in its nature. It is probable that the architect will receive the usual and customary rate of from seven to ten per centum upon the cost of erection of the hospital plant and that when it functions as a hospital with its staff of medical experts, nurses and employees the value of their services and compensation will not be lessened by the character of the institution which they will serve.

The petitioners are asking for an order fixing the sum which this estate shall pay them of $60,000 in addition to the $50,000 which the executor has already paid them. After giving the matter very mature thought and after considering all of the elements which I believe should be considered with proper weight to each I have concluded to fix the additional compensation of these petitioners at $30,000, that is to say, in addition to the $50,000 already received by them. I believe this to be fair, just and reasonable in all the circumstances. A larger fee in similar circumstances might be justified in the case of attorneys living and practicing in the great metropolitan centers where costs of living and maintaining offices are much greater than in the smaller communities.

The amount which I am fixing is approximately four per centum of the amount of this estate. This is less than the amount which may be granted as costs under section 1513 of the Civil Practice Act as additional allowance. It compares favorably with the fees which real estate brokers generally receive. It is my understanding that in this community these rates range from two and one-half per cent upon city property up to as high as ten per cent on farm and manufacturing properties.

Let an order in accordance with the foregoing be settled upon notice.

**Decreed accordingly.**