Lott H. Wells, S.
This is a proceeding under section 231-a of the Surrogate’s Court Act to fix and determine the reasonable compensation of the petitioners, as attorneys, the firm of Crapser and Kirsch, Central Building, Massena, New York, and the firm of Vaughan and Lyons, 70 Pine Street, New York 5, New York, for legal services rendered the estate of Bertrand H. Snell. Mr. Crapser was admitted to practice in the State of New York in September, 1937; Mr. Kirsch in October, 1952; Mr. Vaughan in January, 1928; Mr. Lyons in December, 1927.
Bertrand EL Snell, a resident of the Town of Potsdam, died on February 2,1958 leaving a will dated July 23,1956 and a codicil dated November 22, 1957. His distributees are his widow, Sara M. Snell, and two daughters, Helen Snell Cheel and Sara Snell Petersen. William E. Petersen and John W. Winthrop were named as executors. The will and codicil were duly admitted to probate February 6,1958 and letters testamentary issued to the executors.
Decedent bequeathed his tangible personal property to Mrs. Snell and in addition made bequests outright or in trust to or for the benefit of individuals and charities in total amount of $1,059,006 including a bequest of $600,000 to Mrs. Snell and bequests of $100,000 to each of his two daughters. The bequests also included eight separate charitable gifts in total amount of $166,006 and 13 general legacies to individuals aggregating *1045 $93,000. The residuary estate was placed in trust to pay the income therefrom to Mrs. Snell during her lifetime with provision for payment of the principal upon her death to the trustees of two inter vivos trusts, both of which were established in the year 1952, one for the benefit of Mrs. Oheel and remaindermen, the other for the benefit of Mrs. Petersen and remaindermen.
The firm of Crapser and Kirsch was retained by the executors upon the death of Mr. Snell. The firm of Vaughan and Lyons was retained in June, 1958. Both firms rendered legal services in the estate administration to the date of the petition herein. ‘ ‘ Said services comprise generally of the preparation of the necessary papers for the admission to probate of the Will' and codicil thereto of the decedent and the issuance of letters testamentary thereon; preparation of legal documents required for the transfer of securities and other assets to the executors; advice as to the payment of general legacies in kind and the income tax consequences thereof; preparation of Federal and New York State estate tax returns and research and advice on Canadian Succession Duty taxes; research and advice on various income tax problems; research and advice regarding the disposition of the estate’s interest in Chazy Orchards, a partnership in which the decedent had a half interest; research and advice on the disposition of the bonds of Black River Regulating District, preparation of the intermediate account of the executors up to May 31, 1960, and of other papers involved in the entry of a decree settling such intermediate account (Surrogate’s Ct. Act, § 231-a.)
On the hearing the testimony as to the services were described with reference to the following categories.

Parts of Days

Crapser& Kirsch

Vaughan & Lyons

Probate and related matters...... 12
General legacies.................. 39 22
Federal and New York State Estate Taxes ........................ 89 89
Canadian Succession Taxes....... 35 11
Income tax matters............... 6 27
Chazy Orchards................. 33 66
Bonds of the Black River Reg. Dist 29 14
Accounting ..................... 33 22
Miscellaneous ................... .. 100 10
Total 376 261
*1046 The petitioners are of the opinion that the reasonable value of the legal services rendered by them up to the date of the petition is the sum of $150,000. They are asking for an order fixing the sum which this estate shall pay them of $100,500 in addition to the $49,500 which the executors have already paid them.
The intermediate account of the executors sets forth the gross estate at $6,879,249.78. It reports capital gains during the period of the account at $498,858.48 and reports income received during the period of the account at $416,109.31. The assets included four separate issues of U. S. Treasury Bonds, $235,-944.02; 83 issues of municipal bonds, $1,620,617.49; two issues of corporate bonds, $21,180.49; 63 separate issues of common stocks, $4,332,763.69; three issues of preferred stocks, $65,-828.75; cash, $245,323.66; insurance to estate, $55,940.23; partnership interest, apple orchard, $234,901.15; real estate, $62,500; miscellaneous, $4,250.40.
“At the time of Ms death, the decedent was the owner of $130,000 Black River Regulating District 3% bonds due September 1, 1951 which he had held for many years. The Black River Regulating District was organized in 1919 pursuant to the provisions of Article VII-A of the Conservation Law enacted by Chapter 662 of the Laws of 1915. The purpose of the Act was to provide for regulation of rivers by storage reservoirs — various attempts were made over the years to have the State of New York assume responsibility for the principal amount of the bonds through enactment of legislation.— The last such attempt during the lifetime of the decedent failed a year or so before Ms death. At the time of the death of the decedent and in view of the prior history of the bonds there appeared to be no reasonable prospect that the principal of the bonds would ever be paid. Accordingly the bonds were reported in the estate tax returns as having no value ’ ’.
The New York State Bar Association, March 1, 1958 compilation of minimum fee schedules adopted by local Bar Associations within the State of New York, “ compiled for information of the Bar only and not to be deemed an endorsement by the New York State Bar Association of the principle of minimum fee schedules or approval of the amount of any fee listed herein ”, indicates that all such fee schedules are on a percentage of amount of estate as basis and in approximately 80% of counties the recommended minimum compensation to attorneys exceeds a single commission. For St. Lawrence County the schedule indicates that the minimum fee of an attorney should equal two commissions on gross estate. This was not substantiated. It *1047 is believed the schedule prior to 1953 recommended one and one-half times a single commission.
The instructions issued by the State of New York, Department of Taxation and Finance, relating to motions to fix estate taxes in the Counties of Kings, Queens, Nassau and Suffolk, “ and approved by the Surrogates ’ ’, indicate that the allowable compensation to attorneys is in excess of a single commission. “ 8. Attorneys fees paid or to be paid must be set forth and should be limited to a reasonable amount. Ordinarily such fees in order to be deductible on motion should not be more than 5% on the first $5,000 of the gross estate, 4% on the next $10,000, and 3% on the balance. Where attorney’s fees exceeding such amounts are claimed for any reason, the proceeding will be referred to the appraiser
Petitioners produced two expert witnesses. The first expressed his opinion as to the value of petitioners’ services at $185,000, the second at $175,000. The first witness was admitted to practice in New York State in October, 1914 and is a former president and chairman of the board of the Northern New York Trust Company. The second, from California, was admitted to practice in Illinois, 1911, in Iowa, after World War I, in California, 1931. He made a national survey, ‘1 Attorneys ’ fees on Probate ”, which was published in the August, 1960 issue of “ Trusts and Estates ”, by Fiduciary Publishers, Inc., New York, N. Y. This article reports that in the great majority of jurisdictions in the country, the attorney’s fee is determined by applying a system of percentages to the value of the estate accounted for, with additional compensation for extraordinary services. The estate accounted for usually covers all assets coming into the hands of the executor or administrator. A few States exclude real property which is not sold during probate. There is also a small group that apply the percentage to joint tenancy property and to insurance proceeds. Seven States have statutes fixing the attorneys’ fees: Arkansas, California, Idaho, Iowa, Missouri, New Mexico and Wyoming. An eighth State, Arizona, by statute fixes the fiduciary’s fees and the courts uniformily allow the same fees to the attorney. Few of the statutes are alike in the percentages or the brackets to which the percentages apply. For estate value of $1,000,000 the statutory State fees are: Arizona, $40,480; Arkansas, $29,050; California, $13,500; Idaho, $30,170; Iowa, $20,120; Missouri, $29,050; New Mexico, $50,150; Wyoming, $20,350. In 11 States: Georgia, Illinois, Kentucky, New Hampshire, North Dakota, Oklahoma, Oregon, Rhode Island, South Dakota, Utah and *1048 Wisconsin, the State Bar has published a schedule of recommended minimum fees based on a percentage of the estate which the courts follow. For estate value of $1,000,000, the State Bar fees are: Illinois, $22,500; North Dakota, $30,000; Oklahoma, $25,100; Oregon, $20,630; South Dakota, $32,000; Utah, $16,365; Wisconsin, $25,550. Twenty-two States have no official or unofficial schedule of State-wide application. However, many local Bar Associations have issued a schedule of minimum fees. With respect to the percentage applicable to values above $100,000, they are: South Carolina, Texas, 1 Connecticut, Florida, Maryland, Montana, Ohio, 2%; Alabama, Kansas, Washington, 2%%; Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Nebraska, New Jersey, Pennsylvania, Vermont, 3%. The report does not include Delaware, Maine, Mississippi, North Carolina, Virginia and West Virginia. The fact that in many States an attempt has been made to establish, by statute or State Bar promulgation, a State-wide standard based on the size of the estate, and in most of the other States, local Bar Associations have adopted schedules based on the size of the estate, demonstrates the consensus among attorneys in this country that the size of the estate is a fair measure of the fee. For the New York City Metropolitan area he reports the fees run about 5% up to $50,000 and 2%% over that sum. A percentage schedule which is close to a Nationwide average is reported by Mr. Walter as follows: 7% on first $1,000; 5% on next $4,000; 4% on the next $10,000; 3% on the next $60,000; and 2%% on the balance over $75,000.
The question of a fee of $150,000 presents an unusual problem in St. Lawrence County. A very, very small percentage of the estates gross this amount. Are such intricate or difficult questions of law presented as to require such legal services as to justify this amount? (Matter of Stevens, 114 App. Div. 607 [1906], affd. 188 N. Y. 589.) The distinction between executorial and legal services is stated in Matter of Hallock (214 App. Div. 323, 324 [1925]) as “ What any layman could perform or was capable of performing would be strictly executorial duties”. (Matter of Owen, 144 Misc. 688 [1932].)
“ The testimony of experts is in no sense controlling upon the court and is only advisory.” (Matter of Owen, supra, p. 694.) ££ The presentation of so-called £ expert witnesses ’ as to the value of routine services to an estate in a proceeding before the Surrogate’s Court borders on the utterly futile.” (Matter of Kentana, 170 Misc. 663, 664 [1939].) ££ Were I to be controlled by these opinions my dilemma would be apparent, but that I am *1049 not to be so controlled has been repeatedly held (Matter of Potts, 123 Misc. 346, 348 [1924].) “ Expert evidence, after all, is merely the opinion of the witnesses offered, and the court * * * may exercise an independent judgment in determining how far it will follow the opinions expressed.” (Schlesinger v. Dunne, 36 Misc. 529, 531 [1901].)
11 There is no definite rule by which can be determined what is reasonable compensation to an attorney under any given state of facts. Many elements enter into the determination of the question. * * * The court will take into consideration: (1) the advantages resulting to the client or the estate because of the services rendered; (2) the amount of time spent in doing the work for which compensation is asked; (3) the amount involved-in the litigation; (4) the novelty and intricacy of the questions of law involved; (5) the ability and standing of the attorney.” (3 Warren’s Heaton, Surrogates’ Courts [6th ed.] § 294 [par. 3], cl. [a], p. 722; Matter of Stevens, 114 App. Div. 607, supra; Matter of Potts, 123 Misc. 346, affd. 213 App. Div. 59, appeal dismissed 241 N. Y. 510, affd. 241 N. Y. 593; Matter of Lester, 172 App. Div. 509, 520 [1916]; Matter of Hallock 214 App. Div. 323, 327, 328, supra; Matter of Owen, 144 Misc. 688, supra; Randall v. Packard, 142 N. Y. 47, 56 [1894]; Matter of Saperstone, 258 App. Div. 776 [1939].)
The amount of time enumerated as spent by the petitioners in doing the work for which compensation is asked, is limited by the testimony, page 50: “ Q. Mr. Vaughan, you use the term, parts of days, just what do you mean? A. I used the term, parts of days, Judge, meaning literally parts of days. I do not believe I can recall a professional day when I did nothing, but work on a particular case with the sole exception of when we were preparing for trial or preparing for oral argument.
“ Q. What I want for instance, is half an hour or two hours. A. It could be as little as five minutes or it might be as much as half a day, it is variable. I was quite struck by the answer Mr. Crapser gave in his testimony because it is so true, we talk about parts of days, but the truth of the matter is we never get the cases out of our heads.”
The question of advantages resulting to the client or the estate because of the services rendered, is limited by the testimony, page 101, by the court: “ Q. I would like to have you show how the firm of Vaughan and Lyons was brought into this? A. (Mr. Vaughan) We were brought in, Judge, at the request of Mr. Petersen. Mr. Petersen is an officer of the Irving Trust Company and is now the President of the Irving *1050 Trust Company and Vaughan & Lyons have regularly served the Irving Trust Company in one form or the other since 1942, before the partnership.
“ Q. There was no special problem that brought you in? P. 102: A. (Mr. Vaughan) There was no special problem except such problems as would be inherent in an estate of this dimension and problems which occur from time to time.”
“ It is the rule that where cofiduciaries employ separate counsel, the aggregate allowances for such legal services may not exceed the amount which would be awarded for compensation where both or all of the cofiduciaries were represented by a single attorney or firm of attorneys.” (Matter of Levi, 3 Misc 2d 746, 748 [1956]; Matter of Kentana, 170 Misc. 663, 664 [1939].) “ In the great majority of estates a single attorney or firm of attorneys is employed to represent the executors or other fiduciaries. That system results in harmony, expedition and the avoidance of unnecessary expense. It is, however, the legal right of each representative of the estate to employ separate attorneys. * * * It inevitably leads to an attempt to increase the cost of legal services in the administration beyond the amount which would be deemed reasonable for the services of a single attorney representing two or more fiduciaries ”. (Matter of Bloomingdale, 172 Misc. 218, 228 [1939].)
The question of the services in relation to the Black River Regulating District Bonds is limited by the testimony, page 47: (James N. Vaughan) —“ the Legislature passed a bill imposing liability for the bonds on the State of New York and the Governor signed it, unlike his predecessor, with no compunction at all. When we got a good realistic Governor in the person of Governor Rockefeller — the estate recovered ’ \
The estate records are kept in Potsdam, by Mr. Winthrop, coexecutor. Mr. Winthrop was associated with Van Strum & Towne, Inc., investment counsel, September 1, 1946 to 1949; Fiduciary Counsel, Inc., New York City, 1949 to July, 1951; Bertrand H. Snell, July 1, 1951 until his death. The account, Schedule C-2, shows payment of $2,290 for certified public accountants’ fees since 1958, and $2,850 to Van Strum & Towne, investment counsel, since 1958. This is not objected to.
“ As has been observed on many occasions, the reasonable compensation of counsel for the conduct of an uncomplicated estate of moderate size will ordinarily approximate between five percent of the gross assets and a single executor’s commission. Of course, if serious complications are encountered or the services rendered necessarily extend over a period considerably longer than that customarily required for the settlement of *1051 the usual estate, this figure may be varied. ’ ’ (Matter of Kentana, 170 Misc. 663, supra.) ‘ ‘ Presumably where a percentage method is used as a ‘ rule of thumb ’ to determine the reasonable value of services, it is based on the premise that experience has shown that in the ordinary estate the amount of work done, etc., is reflected in the value of the assets.” (Matter of Robinson, 202 Misc. 231, 233 [1951].)
On the question of percentage of amount of estate as basis, “it is clear that merely basing the fees upon the size of the estate is not a proper method of determining the reasonableness of the attorney’s charges except perhaps as a matter of convenience, * * * the size of the estate is but one of the elements to be taken into consideration. If a percentage rule could be applied at all, it would obviously be applicable only where an ordinary simple estate is concerned. And even here, fees estimated on such a basis may be too high or even too small. ’ ’ (3 Warren’s Heaton, Surrogates’ Courts [6th ed.], § 294 [par. 3], cl. [b], p. 723.) Petitioners’ Exhibits 1, 4, and 5 are founded exclusively on percentage of amount of estate as basis of the attorney fee. This indicates the extent of the ‘ ‘ percentage ’ ’ domination on question of the fee over the more important elements of intricate or difficult questions of law presented, as to require legal services as to justify a large fee. (Matter of Stevens, 114 App. Div. 607, supra.)
Canon 12 of the Canons of Ethics of the New York State Bar Association provides:
‘ ‘ In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client’s ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration.
‘ 1 In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer’s appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services ; (4) the amount involved in the controversy and the benefits *1052 resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.
“ In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a bar association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee.
‘ ‘ In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade.”
It appears there should be no distinction between ‘ ‘ ability to pay ” and “ amount involved ” in Canon 12 under the circumstances of this case. Also, “ the certainty of the compensation ” is provided for. (Surrogate’s Ct. Act, §§ 222, 231-a, 278, 279, 285.)
This proceeding is due to the circumstance the estimated counsel fees reported by the executors in the New York estate tax appraisal (Tax Law, § 249-w) were reduced $100,000 by a pro forma order of the Surrogate under article 10-c of the Tax Law, dated October 20, 1959. (Matter of O’Day v. Yeager, 308 N. Y. 585, 588 [1955].) “ In Mylod, for instance, the determinations made by the tax appraiser for Dutchess County were subject to review and modification by the surrogate ”. (Matter of Mylod v. Graves, 274 N. Y. 381.) Matter of Benjamin (1 A D 2d 1020 [1956]) held the purpose of the tax proceeding is to fix the amount of the estate tax, and the order is res judicata only on the question of taxation. The Department of Taxation and Finance, to insure that the allowance for attorney fees on estate appraisals is not too great, have a percentage method of checking the amount. ‘ ‘ It has been the rule that in fixing the estate tax, the attorneys for the State Tax Commission ordinarily require additional proof of reasonableness where a claim in excess of five per cent of the gross estate is asserted for attorney’s fees.” (3 Warren’s Heaton, Surrogates’ Courts [6th ed.], § 294 [par. 3], cl. [b], p. 723.) “ In small estates we do not object to the amount of attorneys fees unless they exceed 5% of the gross estate. In larger estates, however, the percentage decreases ”. (Letter of .Sept. 18, 1959 to St. Lawrence County Treasurer from Dept, of Taxation & Finance.)
The estimated counsel fees in an estate tax appraisal, as a deduction, is a representation the executor or administrator has *1053 accepted from Ms counsel as the proper remuneration for such services. It concerns a practice that has been changing with the adoption by local Bar Associations of fee schedules on percentage basis. Such estimated fee is usually based on the local fee schedule. It is the imposition by lawyers on their clients, the executors and administrators, most of whom know little about law or lawyers or reasonable counsel fees necessarily incurred, that the Bar Association fee schedules are the proper basis for the fee. Is this a permissible professional relationship or a proper professional practice 1 Chapter 443 of the Laws of 1914, permitting payment by the executor, administrator or trustee of the fees of his attorney out of the funds of the estate, appears to be the basis of this practice. It makes the executor or administrator dependent on his counsel for advice on such fees. It results in payment for counsel fees from funds of the estate, upon representation of counsel in amounts that would not have been paid out of his own funds for such services prior to this change in the law. This dependency on counsel was not present before this change in the law because the funds or estate were not available for such payment.
There is however, a high standard of conduct imposed upon the attorney in this relationship: “ Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. * * * The law presumes in the case of a guardian and ward, trustee and cestui que trust, attorney and client * * * from the relation of the parties itself that their situation is unequal * * * and that relation appearing itself throws the burden upon the trustee, guardian or attorney of showing the fairness of his dealings.” (Cowee v. Cornell, 75 N. Y. 91, 99, 100 [1878]; Matter of Amuso, 13 Misc 2d 686, 687 [1958].)
“ Co-executors, however numerous, constitute an entity and are regarded in the law as one person. Consequently the acts of any one of them in respect to the administration of the estate are deemed to be the acts of all, for they have all a joint and entire authority over the whole property. * * * But this rule is *1054 limited to acts of a ministerial nature. Acts that call for the exercise of judgment and discretion one of several cannot do. The concurrence of all is necessary.” (3 Warren’s Heaton, Surrogates’ Courts [6th ed.], § 225 [par. 1], pp. 34, 35; Matter of Hammer, 237 App. Div. 497, affd. 261 N. Y. 677 [1933]; Fritz v. City Trust Co., 72 App. Div. 532, affd. 173 N. Y. 622 [1902].) A legal representative, “ is bound to employ such diligence and such prudence in the care and management, [of an estate] as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.” (King v. Talbot, 40 N. Y. 76, 85, 86 [1869].) “ The rule must be regarded as well settled, that the contracts of executors, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, as for services rendered, goods or property sold and delivered, or other consideration moving between the promisee and the executors as promisors, are the personal contracts of the executors, and do not bind the estate”. (Austin v. Munro, 47 N. Y. 360, 366 [1872].) “ The burden of proving the claim created by an executor for counsel fees or other expenses of administration rests upon him. He must show the justice of the claim, that it was necessary, and that it was of the value charged.” (Matter of Lester, 172 App. Div. 509, 520 [1916].)
Before chapter 443 of the Laws of 1914:
‘ ‘ Theoretically the estates of deceased persons are administered upon the principle * * * that the executor or administrator shall personally advance the necessary expenses of administration in reliance upon the final decree of the surrogate for reimbursement, yet it is well known that no administrator or executor does in fact thus execute his trust. On the contrary, he pays all necessary expenses of administration out of the trust funds, if he happens to have sufficient on hand for that purpose, with the understanding that if for any reason, upon the final settlement of his accounts, any item of expenditure thus made shall be disallowed by the surrogate, he will be required to reimburse the estate therefor.” (Shaffer v. Bacon, 35 App. Div. 248, 251, affd. 161 N. Y. 635 [1898].)
“ This practice received statutory recognition for the first time in the enactment of section 2692 of the Code of Civil Procedure in 1914 (Laws of 1914, chap. 443) which provided that ‘ an executor, administrator, guardian or testamentary trustee may pay from the funds or estate in his hands, from time to time, as shall be necessary, his legal and proper expenses of administration necessarily incurred by him, including the reasonable expense of obtaining and continuing his bond and the reason *1055 able counsel fees necessarily incurred in the administration of the estate. Such expenses and disbursements shall be set forth in his account when filed, and settled by the surrogate.’
“ The provisions of this enactment have been continued unchanged in section 222 of the Surrogate’s Court Act.
“ The legislative purpose in this legislation is stated in the note of the revisers, as follows: ‘ In theory now many payments of such character must be made from personal funds, although in practice they are not. It is better to authorize the common practice ’.” (Matter of Rosenberg, 169 Misc. 92, 96 [1938].) (Italics added.)
“ Formerly, the rule was that in the absence of extraordinary conditions, an executor or administrator should pay out of his own funds the fees of his attorney, and then after paying them obtain indemnity or allowance upon the settlement of his accounts to the extent that the payments were found to be reasonable and necessary (Jessup v. Smith, 223 N. Y. 203, 207, 208). In 1914 the law was changed by permitting payment in the first instance out of the funds of the estate, subject always, however, to like restrictions as to amount (Sur. Ct. Act, § 222, formerly Code Civ. Pro. § 2692). * * * The administratrix, therefore, was acting within her rights if she disbursed the moneys of the estate for reasonable and necessary expenses though in advance of her accounting. She took the risk, however, that a surcharge would follow if the expenses were disallowed as improper or excessive.” (Matter of Gilman, 251 N. Y. 265, 271 [1929].)
To authorize the common practice, chapter 443 of the Laws of 1914, authorized the executor or administrator to pay the reasonable counsel fees from the funds or estate in his hands. Whether estate funds or his own funds were used for this purpose, it was necessary to have such payment settled by the Surrogate. (Matter of Gilman, 251 1ST. Y. 271, supra.) The intention of the Legislature in the language of section 222 of the Surrogate’s Court Act in authorizing such payment from estate funds was also at the same time to continue to safeguard the estate assets. To do this, clearly it was not intended to make any question of excessive exactions against estates depend merely on whether or not the executor or administrator has elected to contest payment of the fee. To be responsive to the ethical and moral standards of the community, and serve professional and public interest it appears section 222 of the Surrogate’s Court Act, is intended to be authority to call upon the lawyer to show what he has done in the case as a basis for determining whether the fee is exhorbitant, before rather than after collection of the fee. (Gair v. Peck, 6 N Y 2d 97, *1056 113 [1959].) “ Surrogates’ Courts * * * may be vested with greater power to rule on lawyers’ fees than merely to decide whether they are so large as to be unconscionable (Gair v. Peck, 6 N Y 2d 97,108, supra.) If this is not the intention of the Legislature in section 222 of the Surrogate’s Court Act, public interest may require the use of estate funds provided for in this section for such purpose, be limited.
The reasonableness of the fee sought is a question of fact, each case depending on its own peculiar circumstances. (1 Jessup-Redfield, Surrogates Law and Practice, § 332, p. 380; Ward v. Orisini, 243 N. Y. 123 [1926].) By reason of the trust, the services rendered necessarily extend over a period longer than that customarily required, although the continuance of the trust did not cause any substantial additional legal services. ■Here we have a comparatively large estate. The attorneys for the executors are leading members of the Bar of wide experience, competency and peculiar skill in conducting cases such as this. There is no question of their ability and their capacity and success in handling large and important matters and in commanding large fees therefor. However, there was no litigation of serious complication of any kind nor any unusual or extraordinary feature. The probate of the will was simple and accomplished without difficulty or delay. It is rarely that an administration of an estate is more simple in its details than was this. The nature of the legal services has not been shown to have been burdensome. The cofiduciaries have employed separate counsel, from separate counties, rural and metropolitan, where Bar Association fee schedules are not the same. (Matter of Belcher (129 Misc. 218 [1927].) Under the Surrogate’s Court Act, such fees are not fixed by statute, by the State Bar Association, by local Bar Associations or by percentage. Under the County Bar Association fee schedules, the question of reasonable value changes at county borders. “ The standard by which the value of such services is measured is, however, the fair and reasonable value of the services rendered after considering the various elements referred to.” (Matter of Potts, 213 App. Div. 59, 62, supra; Surrogate’s Ct. Act, § 222.)
The petitioners have received $49,500 from the executors as compensation for their services. When the amount of time spent by them in doing the work for which compensation is asked is considered, petitioners will have received for 537 parts of days (five minutes to half a day), $92 per part of day. Reasonable is defined as, equitable, fair, just, moderate. (Webster’s New International Dictionary, 2d.) As used in section 222 *1057 of the Surrogate’s Court Act, “reasonable counsel fees”, appears intended by the Legislature, to be an amount layman could understand. It was the duty of the executors to confer and co-operate with each other. Living in different places correspondence was necessary but it was purely executorial. I make no criticism of the testimony of the attorneys who were called to testify as to the value of petitioners’ services. They were answering a hypothetical question. “Unless a hypothetical question is fair and presents a true picture the answer to it necessarily possesses little or no convincing power.” (Matter of Hallock, 214 App. Div. 324, 327, supra.) On applying all these tests to the determination of what compensation should be awarded, the elements involved in Matter of Stevens (114 App. Div. 607, supra; Canon 12 of the Canons of Ethics of the New York State Bar Association; Surrogate’s Ct. Act, §§ 222, 279) the court determines and fixes the reasonable value of the attorneys’ services to be $50,000, for all services, including this proceeding pursuant to section 231-a of the Surrogate’s Court Act.