*751 OPINION OF THE COURT
Robert A. Lifson, J.
On January 27, 1997, this postjudgment application for a change of custody with respect to the child Ryan was withdrawn without prejudice to renew at a more appropriate time. Pursuant to a stipulation entered on said date, all parties, including the court-appointed Law Guardian, agreed that the only issue unresolved was whether counsel and expert fees should be awarded, and the apportionment of said items. All sides agreed to waive their right to a hearing on said issues, and in lieu thereof, to have said matters determined solely on papers to be submitted. In accordance with that scheme and subsequent adjournments, the matter was to be submitted for decision April 8, 1997. While the matter was sub judice, defendant’s counsel submitted an article appearing in a legal publication which addressed some of the issues raised. Copies of the covering letter and the attached scholarly treatise were sent to all sides. There was no opposition by the other parties nor requests for further submissions and so the matter shall be deemed submitted as of May 28, 1997, the date of the court’s receipt of said treatise.
The defendant’s counsel has submitted an affidavit of legal services indicating that an anticipated 36.7 hours of time will be expended. Defendant’s counsel has an hourly billing rate of $175 per hour. The defendant’s anticipated bill for legal services rendered amounts to $5,437.38, of which $2,914.20 ha"s been received leaving a balance owed of $2,523.18. No one disputes the time expended, the qualifications of counsel, or the reasonableness of the expenses incurred. The defendant submits a current affidavit of net worth and claims that since the initiation of this application his income has declined significantly due to the loss of an important contract. No basis exists to corroborate such statement, but the court notes that during the course of this litigation the defendant has consistently shown a much greater earning capacity than plaintiff and the present circumstances cannot now be deemed to yet constitute a permanent impairment of his income-generating potential.
The plaintiff’s counsel has submitted a detailed affidavit of services wherein 42.15 hours of legal services were contemplated. However, the plaintiff’s counsel maintains an hourly billing rate of $375 per hour. Applying the hourly rate to the time expended would indicate that $15,806.25 of legal expenses *752 have been incurred by plaintiff, against which an initial retainer of $2,500 is credited leaving a balance owing of $13,306.25. No one disputes counsel’s qualifications or the time expended. However, the defendant takes sharp issue with certain of counsel’s charges, particularly his hourly rate and the $175 per hour paralegal charges. The plaintiff submits a net worth affidavit which is virtually worthless. The plaintiff alleges that her income is about $2,060.51 per month while claiming expenses of $3,733.66 per month. The inference is that the plaintiff cannot make ends meet, but plaintiff fails to indicate that additional income exists by virtue of the contributions of her new spouse or, conversely, she fails to differentiate or apportion expenses of her prior family unit from those incurred by the new, expanded family unit containing several stepchildren. Suffice it to say, the plaintiff and the issue of the subject marriage are not in extreme financial difficulties. In fact, the plaintiff concedes that she has a positive net worth of nearly $120,000.
The defendant also sought an equal apportionment of the Law Guardian fees as well as those of the forensic expert. The Law Guardian has submitted proof indicating that 12.5 hours of time were expended by her. No one disputes her qualifications or the time expended. She has been advanced $400 by the defendant.
The forensic expert has submitted a statement of account which indicates that, based on an 80/20 division of fees owed, a balance is due from defendant of $2,669.57 and the sum of $817.39 from the plaintiff. The forensic expert’s billing rate was $125 per hour. The apportionment assigned is derived from the order of appointment dated October 7, 1996 (Lifson, J.) which required the parties to pay in proportion to their then gross incomes subject to reallocation at trial. Neither the defendant nor the Law Guardian took exception to this bill. However, the plaintiff, in unusually strong terms, has expressed unwillingness to pay any part of said bill and alleges that the forensic expert in question is not properly qualified. The plaintiff’s counsel goes so far as to state that the forensic expert is under investigation for rendering psychological services without being licensed as such in New York State. How confidential information of this nature is known to counsel is explained by the forensic expert who claims that the complaining party is none other than the plaintiffs counsel.
In fixing counsel fees on a postjudgment application, the court must consider the circumstances of the parties and the *753 case. (Domestic Relations Law § 237; DeCabrera v Cabrera-Rosete, 70 NY2d 879 [1987].) In the present case, neither party-prevailed but rather, both sides agreed to defer consideration of a modification of the custodial arrangement in accordance with the potential future desires of the child to a more appropriate time, to wit, at the conclusion of the school year. The result achieved appears to be a stalemate rather than a victory for one side or the other. Both parties recognized the futility of trying to impose their will on this postpubescent child whose brother has previously removed himself from the supervision of the plaintiff to reside with the defendant. That being the case, the necessity for legal services of any kind is questionable.
Additionally, the court observes that neither party submitted candid or accurate statements with respect to their ability to pay counsel fees. Nonetheless, the respective papers submitted indicate that each side has sufficient resources to pay their respective counsel. An award of counsel fees should not be punitive and should be granted to assure adequate legal representation for both parties on an equal footing. That principle should not be misapplied to require the former spouse with greater income-producing capability to subsidize a choice of counsel whose expertise and concomitant cost might be beyond the capabilities of parties in this economic bracket. In so holding, the court need not address further the well-stated criteria set forth in Matter of Potts (123 Misc 346, affd 213 App Div 59 [1925]), since consideration of the circumstances of the parties and the case makes such further analysis moot.
Turning to the question of the propriety of an award for expert fees and the apportionment thereof, the court is keenly disappointed that persons advocating attorney’s fees of such magnitude (the necessity of which may have been negated by the services of the forensic expert) would seek to deny any professional compensation for time actually expended. To be fair, the plaintiff’s counsel is one of many respected members of the matrimonial bar of Suffolk County who have raised this very issue on numerous occasions informally with the various Judges assigned to the dedicated matrimonial part. The present application and a companion matter (decided simultaneously herewith) are the first to raise the issue in an appropriate judicial forum subject to the inevitable potential appellate review.
To better understand the issue in proper context, the prevailing practice of appointment of experts should be borne in mind. *754 Generally, forensic experts are chosen initially after a preliminary conference wherein one or both parties indicate that such appointment would aid the disposition of the case. The selection of such expert is within the sound discretion of the court. However, most jurists acquiesce to the mutual choice of both attorneys. Absent such input from the respective attorneys, the assigned Judge selects an expert from a list of forensic personalities who have requested work of this nature. The Judges assigned to the dedicated matrimonial part are in an irregular state of flux. As a result, where, as here, postjudgment applications are brought affecting custodial or visitation rights, rarely is the Judge who executed the judgment available to hear the present problem. In such instances, most Judges will reappoint the initial forensic expert to assist the court to provide consistency, stability and economy with respect to the rendering of expert assistance. Such an approach provides an additional disincentive for litigants to bring repetitive applications hoping to obtain a different result with the advent of additional judicial and expert personalities.
The issue has been squarely addressed in a recent, thoughtful analysis contained in the May 1997 edition of The Suffolk Lawyer by Peter D. Sereduke, principal law secretary to the Honorable Howard Eerier, Justice of the Supreme Court, and lecturer for the Suffolk Academy of Law. As his article demonstrates, 22 NYCRR 202.18 states: "In any action or proceeding tried without a jury to which section 237 of the Domestic Relations Law applies, the court may appoint a psychiatrist, psychologist, social worker or other appropriate expert to give testimony with respect to custody or visitation * * * The cost of such expert witness shall be paid by a party or parties as the court shall direct.” (Emphasis supplied.) Nowhere does the rule require that the expert to be appointed by the court be duly licensed by the State as a prerequisite to the appointment. Indeed, the rule suggests that the court can appoint any "expert” to assist it in determining what course of action would further the best interests of the child. As Mr. Sereduke notes, all the learned commentators have observed that licensure is not a prerequisite to a witness being qualified as an expert, said determination being within the sound discretion of the court. (Prince, Richardson on Evidence § 7-304 [Farrell 11th ed]; Fisch, New York Evidence § 428 [2d ed].) The court concurs with Mr. Sereduke’s observation that: "The selection of the court appointed expert is within the sole province of the court, and each judge may have different views on the qualities and *755 experience needed to be so appointed. In the end, it is the particular judge who must be satisfied. The judge is not bound by his or her expert’s recommendation, and, should an appointed expert fail to maintain the standards required of the appointing judge, the court may remove him or her during the proceeding, or if the case is concluded, simply not appoint that expert in the future. The expert is accountable to the judge.”
In the instant matter, the initial appointment was made by Justice Berler. This court would be hard pressed under the circumstances to presume that Justice Berler was under any misapprehension of the qualifications of the expert he appointed. Nor would it be proper for this court to undertake such consideration. Suffice it to say no objection to Justice Berler’s appointment of the expert was made at the time of the entry of his order, nor is there a record that any appeal of that appointment was made. Moreover, with respect to this court’s appointment of the same expert to continue and update her evaluation, objection may have been entertained and was discounted by the appointing Judge to further economy and consistency of expert analysis. No formal application to reargue the determination of the court was made, nor does it appear that any appeal was taken. Under these circumstances the plaintiff was left with only one option to challenge the propriety of the expert’s appointment (that being to object to the expert’s proffered testimony upon trial) which alternative was rendered moot by the parties’ settlement of the motion, however temporary it may be.
The court has reviewed the work and time expended by the expert. No one has contested the reasonableness of the time expended or the necessity for the work tendered in furtherance of this court’s reappointment of this expert. Accordingly, the court concludes that the fair and reasonable value of the services tendered by the expert are the sums which she requested. The fees due the expert shall be apportioned in accordance with the prior formula of 80/20 (80% defendant, 20% plaintiff). The court reaches this conclusion because there is no credible proof to suggest that the defendant’s loss of business is other than a temporary impairment of his demonstrably superior earning capacity. For the same reasons, the fees of the Law Guardian shall be likewise allocated in the sum requested, in the same manner of apportionment.