WILLIAM H. SHAFFER, as Administrator de bonis non of the
Estate of GEORGE A. BARTHOLICK, Deceased, Appellant, *v.* THEO-
DORE BACON and Others, Respondents.

*Will — a counsel fee paid by an executor to attorneys procuring a will to be admitted
to probate — it cannot be recovered by an administrator appointed after the will has
been declared invalid on appeal.*

The attorneys for an executor named in the will of a decedent, who has presented
it to the Surrogate's Court, by which it has been admitted to probate, may
properly be paid by the executor out of the assets of the estate a suitable com-
pensation for their services rendered in good faith on behalf of the estate at his
request, although on an appeal from the decree of the surrogate a new trial is
ordered before a jury, which renders a verdict that the decedent was not at
the time of the execution of the alleged will possessed of testamentary capacity,
and that its execution was procured by fraud and undue influence; and the
money thus paid from the estate to the attorneys cannot be recovered from them
by an administrator of the estate of the deceased, subsequently appointed.

*Semble*, that an executor may use the funds of an estate for purposes author-
ized by law, but he may not bind the estate by any executory contract. The
necessary expenses of administering an estate, including the expense of the
probate of the will, are to be regarded as a charge upon, although not a debt
against, the estate.

*Semble*, that where the attorneys act in good faith, the fact that the executor knew
or should have known that the instrument tendered by him for probate was
not in fact what it purported to be, is not sufficient to sustain a recovery against
them for moneys paid to them by the executor in his effort to obtain probate of
the alleged will.

APPEAL by the plaintiff, William H. Shaffer, as administrator *de
bonis non* of George A. Bartholick, deceased, from a judgment of
the Supreme Court in favor of the defendants, entered in the office
of the clerk of the county of Monroe on the 26th day of February,
1898, upon the decision of the court rendered after a trial before
the court without a jury at the Monroe Trial Term.

*William De Graff*, for the appellant.

*Henry Selden Bacon*, for the respondents.

ADAMS, J.:

The plaintiff, as administrator *de bonis non* of George A. Bar-
tholick, deceased, brings this action to recover of the defendants,

who were partners in the practice of law at the city of Rochester, certain sums of money paid to them by one Charles Flaherty, as executor of the last will and testament of Bartholick, in compensation for professional services rendered to Flaherty as executor, in a protracted litigation over the probate of the will under which he assumed to act.

There is but little, if any, controversy respecting the essential facts of the case, which may be thus briefly epitomized :

The decedent, who was a resident of the city of Rochester, departed this life in July, 1888, leaving an instrument which purported to be his last will and testament. In this instrument Flaherty was named as the sole executor thereof, and by its terms he was entitled to receive a legacy of $15,000.

Flaherty subsequently offered the alleged will for probate, and although vigorously contested by one of the decedent's heirs at law, it was duly admitted by the surrogate of Monroe county. Letters testamentary were thereupon issued to Flaherty, who took possession of the personal assets of the estate, which were of the value of about $30,000. An appeal was then taken to the late. General Term, where the decree of the surrogate was reversed, and issues were framed for a trial by jury of certain questions of fact. Upon the trial of these issues the jury, by their verdict, found that the decedent was not, at the time of the execution of the alleged will, possessed of testamentary capacity, and that its execution was procured by fraud and undue influence. The case then went back to the Surrogate's Court, where, on the 6th day of June, 1892, a decree was entered adjudging the alleged will void and revoking the former probate thereof. From this decree Flaherty appealed to the General Term and then to the Court of Appeals, but in neither instance was he successful in his effort to reverse the decree of the surrogate. (*Matter of Bartholick*, 141 N. Y. 166.)

Before the alleged will was offered for probate the defendants were retained by Flaherty, and in pursuance of such retainer they acted as his legal advisers and counsel until the second appeal to the General Term was perfected. From time to time during this period Flaherty paid to his counsel various sums of money which had come into his hands as executor ; but the moneys thus paid amounted in

the aggregate to no more than a reasonable and adequate compensation for the services which the defendants had rendered.

Subsequently, the plaintiff was duly appointed administrator *de bonis non,* and he thereupon brought this action.

Upon the foregoing state of facts this court is called upon to determine whether or not the plaintiff's action can be maintained, or, in other words, whether the defendants can be compelled to pay over to the plaintiff the moneys which they have actually earned and which they have received in the utmost good faith for valuable services rendered by them in behalf of an estate at the instance of one who, at the time of the rendition of the greater part of those services, was both *de jure* and *de facto* the personal representative of that estate.

The theory upon which this action is sought to be maintained, if we correctly apprehend the position of the learned counsel for the plaintiff, is that inasmuch as the defendants have received moneys which they knew belonged to the Bartholick estate, in settlement of an account for the payment of which the representative of that estate was primarily personally liable, they have thereby not only profited by a *devastavit* of the estate, but they have actually participated in the misappropriation of trust funds.

If this view of the case finds warrant in the facts above stated, it is not to be denied that there is great force in the contention that the defendants should be required to restore to the estate the moneys thus obtained; for it is a rule too well settled to admit of discussion, that one who holds money as agent, trustee, executor, administrator, guardian or partner, has no authority or right to use the same in payment of his individual debt, and that if he does thus use it, the party who receives it with knowledge of the facts, does so at his peril. (*National Bank* v. *Ins. Co.,* 104 U. S. 54; *Gerard* v. *McCormick,* 130 N. Y. 261; *Marshall* v. *de Cordova,* 26 App. Div. 615.)

But, unfortunately for the plaintiff, this contention rests upon a rule which, in our opinion, has no application to the facts of this particular case, and, therefore, for reasons which we shall proceed to state, it must be regarded as untenable.

This action is one which under ancient nomenclature would have been designated "*in debitatis assumpsit,*" or an action for money

had and received to the use of the plaintiff; and although such an action is, strictly speaking, legal in its nature, it is one wherein the plaintiff may not recover until he establishes a right founded upon equity and justice; and it is likewise one in which the same principle operates in favor of a defendant who is in this manner called upon for the payment of money. (*Eddy* v. *Smith*, 13 Wend. 488; *Cope* v. *Wheeler*, 41 N. Y. 303; *Rothschild* v. *Mack*, 115 id. 1.)

Now, it is undoubtedly true, as claimed by the plaintiff's counsel, that primarily an executor personally, and not an estate, is liable for all contracts made by him in the course of the execution of his trust, even though they be made in the interest of the estate which he represents. (*Ferrin* v. *Myrick*, 41 N. Y. 315; *Austin* v. *Munro*, 47 id. 360.) And in one instance, at least, this rule has been extended so far as to hold that it was not within the power of an executor or administrator to bind an estate to pay counsel whom he had employed to assist him in preparing and settling his accounts. (*Willcox* v. *Smith*, 26 Barb. 316.)

The peculiar circumstances, however, which appear to have influenced the court in reaching the conclusion it did in the case last cited, need not be adverted to with particularity, inasmuch as the court was particular to say that the principle upon which it was decided in no wise conflicts with the statutory rule which authorizes an allowance to executors and administrators for such actual and necessary expenses as are justly and reasonably incurred by them in the management of estates committed to their care.

But while theoretically the estates of deceased persons are administered upon the principle asserted in many cases of which those above cited are types, that the executor or administrator shall personally advance the necessary expense of administration in reliance upon the final decree of the surrogate for reimbursement, yet it is well known that no administrator or executor does in fact thus execute his trust. On the contrary, he pays all necessary expenses of administration out of the trust funds, if he happens to have sufficient on hand for that purpose, with the understanding that if for any reason, upon the final settlement of his accounts, any item of expenditure thus made shall be disallowed by the surrogate, he will be required to reimburse the estate therefor. Indeed, it would be impossible in many cases to secure the services of a competent

administrator if he were compelled to personally advance the necessary expenses of administration. Nor is it difficult to imagine circumstances in which the rigid enforcement of such a rule would prove exceedingly prejudicial to the estate; and it is probably in recognition of this latter fact that the tendency of the more recent adjudications is in the direction of a relaxation of the rule.

We apprehend, therefore, that the real principle which should govern in cases where the executor is required to expend money in the proper administration of the estate which he represents, is that he " may disburse and use the funds of the estate for purposes authorized by law, but he may not bind the estate by any executory contract, and thus create a liability not founded upon a contract or obligation of the testator." (*Austin* v. *Munro, supra.*) Or that, in other words, the necessary expenses of administering an estate may be regarded as a charge upon, although not a debt against, the estate. (*Fitzhugh* v. *Fitzhugh*, 11 Gratt. 300.) If this rule is adopted, as we think it should be in the present case, it only remains to determine what are proper and necessary expenses of administration.

It has been held in a number of cases that reasonable funeral expenses are a necessary and proper charge upon the estate of a decedent, and that as such they may be collected of the executor or administrator in his representative character. (*Patterson* v. *Patterson*, 59 N. Y. 574; *Dalrymple* v. *Arnold*, 21 Hun, 110; *Laird* v. *Arnold*, 25 id. 4; S. C., 42 id. 136; *Koons* v. *Wilkin*, 2 App. Div. 13.)

It is doubtless a fact, of which courts may take judicial notice, that a dead man cannot purchase his own coffin; but, nevertheless, as was suggested in the case first above cited, a decent respect for the decedent, as well as a proper regard for public sentiment, requires that the dead shall be interred with such degree of solemnity and ceremony as befits the occasion, and it is eminently proper that whatever expense necessarily attends the performance of this duty shall be borne by the estate of the deceased person, and not by his personal representative. The same may be said of the expenses of probate; for the probate of a will of necessity precedes the formal authority of the executor to enter upon the execution of his trust (*Patterson* v. *Patterson, supra*), and it is consequently just as important that he should see to it that this step is taken as it is that

he should arrange for the proper burial of the dead, and to that end that he should employ reputable and efficient counsel if, perchance, circumstances make it necessary for him in the discharge of his duty so to do.

In a comparatively recent case it was said that "a testator in naming an executor gives him an implied authority and direction to do all he reasonably can to prove and carry out the will, and this carries with it the right to charge the estate with the reasonable expense." (*Douglas* v. *Yost*, 64 Hun, 155, 162.)

And this principle is affirmed with even greater emphasis in another case in which it is asserted that where an executor had received letters testamentary on a will duly proved, he " was not only authorized, but it was his duty, believing the first will to be the real last will and testament of William Bradford, * * * to support the decision, * * * and he was entitled to the aid of the estate to discharge all reasonable costs and expenses incurred on that account." (*Bradford* v. *Boudinot*, 3 Wash. C. C. 122.)

But it will doubtless be urged that the rule, as thus stated, has no application to the present case, inasmuch as Flaherty knew or ought to have known that the instrument tendered by him for probate was not in fact what it purported to be. This would, perhaps, be a sufficient reason why he should be denied reimbursement for any moneys actually paid out by him in his effort to probate the alleged will; but it must be borne in mind that this is not a proceeding against a fraudulent executor, but an action against innocent third parties who, it is expressly admitted, have rendered valuable services in good faith, and in behalf of one who, at the time the greater portion of such service was rendered, had been adjudged the legal representative of a large and valuable estate. In view of these facts, we think the defendants are entitled, *ex æquo et bono*, to invoke in an action of this nature precisely the same principle that would be available to them had the instrument propounded been finally established as the last will and testament of George A. Bartholick; and for these reasons we are of the opinion that the judgment appealed from must be affirmed.

All concurred, except HARDIN, P. J., not voting.

Judgment affirmed, with costs.