In the Matter of the Estate of JANE ROSENBERG, Deceased.

Surrogate's Court, Kings County, September 22, 1938.

*Alfred D. Fredericks*, for the receiver, petitioner.

*Schneider & Groggins* [*Stanley S. Groggins* of counsel], for Stanley S. Groggins and Charles A. Schneider, respondents.

WINGATE, S.   The facts underlying the present application have heretofore been aired with some particularity in the reports.   (See *Matter of Rosenberg*, 263 N. Y. 357; *Matter of Rosenberg*, 157 Misc. 490.)   The salient circumstances are that Rose L. Schwobel, who was appointed administratrix of this estate, retained the present respondents, Groggins and Schneider, as her attorneys in its settlement and upon their representation that $7,750 was a proper remuneration for the services which they had rendered, paid them this sum in July, 1931.

Thereafter, in November, 1931, she instituted a proceeding in her representative capacity, under section 231-a of the Surrogate's Court Act, for a determination of the reasonable value of the services so rendered and for a refund of any portion of the sum paid which might be found to be in excess of such reasonable compensation.

This court determined that $5,000 was the reasonable value of such services, and on the authority of *Matter of Anderson* (136 Misc. 110; revd., 232 App. Div. 704; affd., 257 N. Y. 592), directed a refund of the excess, amounting to $2,750.   One of the attorneys appealed to the Court of Appeals which, by a divided court, decided that the surrogate possessed no jurisdiction to direct a refund where the disputed sum had been paid over by the estate representative,

as distinguished from a retention thereof by the attorney, which was the situation in the *Anderson* case.

This limitation upon the authority of the Surrogate's Court was promptly removed by the Legislature (Laws of 1934, chap. 332), which added language to section 231-a remedying the asserted defect.

Thereafter the administratrix instituted a proceeding in this court for the recovery from the attorneys of the fixed sum of $2,750. This was dismissed without prejudice on the ground that the prior reversal by the Court of Appeals had destroyed all parts of the former determination, wherefore the entire proceeding must be reinstituted *de novo*. This occurred early in December, 1935, and thus the matter has ·rested until the present time. In the interval, and on December 31, 1935, a decree was entered settling the accounts of the administratrix surcharging her with the sum of $3,250 expended from estate funds in the payment of her attorneys, which was the amount by which payments were determined to be excessive, and, upon her compliance with the directions of the decree, discharging her as to all matters therein embraced.

The statutory distributees of the intestate in this estate were her two daughters, the administratrix, Rose L. Schwobel, and Kate Lang, an incompetent.

It now appears that some time in or about the year 1937, a personal judgment was recovered against Rose L. Schwobel by one Henry Albert, with the further result that on August 9, 1937, Alfred Lucia was appointed receiver of her property in supplementary proceedings. This receiver has now instituted a proceeding in this court seeking a fixation of the compensation of Groggins and Schneider as attorneys for the administratrix of the Rosenberg estate under the provisions of section 231-a of the Surrogate's Court Act, as amended, and directing them to refund to the petitioner, namely, such receiver, any excess compensation which may be found to have been paid to them.

This proceeding is defended on two grounds, *first*, that the petitioner is unauthorized to institute it under the terms of the Surrogate's Court Act; and, *second*, that enforcement of any claim against the respondents is barred by the running of the Statute of Limitations.

The court is of the opinion, however, that under the peculiar facts here existing, an objection to the maintenance of the proceeding is present which, if anything, is more vital than either of those interposed by the answer. The conception underlying this objection is expressed in the early case of *Austin* v. *Monroe* (47 N. Y. 360, 366) as follows: " The rule must be regarded as well

settled, that the contracts of executors, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, as for services rendered, goods or property sold and delivered, or other consideration moving between the promisee and the executors as promisors, are the personal contracts of the executors, and do not bind the estate."

The same is noted in *Ferrin* v. *Myrick* (41 N. Y. 315, 322), which adds respecting a decision of an administrator to purchase a gravestone for the deceased (p. 318): " He decides it at his peril, to be allowed or disallowed, in the final settlement of his accounts with the surrogate. The seller accepts the judgment and decision of the administrator, acts upon his direction, and makes and delivers the stones or the monument upon his direction and upon his agreement. It is, therefore, most reasonable and proper, that the administrator should be liable himself to the seller, although the estate may not ultimately be liable to him, or to any one else, for the article furnished."

The common-law conception underlying these statements is expressed in *Shaffer* v. *Bacon* (35 App. Div. 248, 251; affd., 161 N. Y. 635): " Theoretically the estates of deceased persons are administered upon the principle asserted in many cases of which those above cited are types, that the executor or administrator shall personally advance the necessary expense of administration in reliance upon the final decree of the surrogate for reimbursement."

The same conception is expressed in the opinion of Chief Judge CRANE, writing for the unanimous court in *Corn Exchange Bank Trust Co.* v. *Bankers Trust Co.* (268 N. Y. 224, 227) when he quotes and applies the following language from *Matter of Maxwell* (218 N. Y. 88, 90): " The law finds expression in these words: ' persons acting *en autre droit*, as executors, administrators, *trustees*, guardians, receivers, etc., are, upon a faithful execution of their trusts, to be *indemnified out of the trust property, for all expenses necessarily incurred in the faithful performance of their duties.'* " (Italics in original.)

The same statement, in substance, is found in many earlier cases. (See *e. g. Downing* v. *Marshall*, 37 N. Y. 380, 388; *Wetmore* v. *Parker*, 52 id. 450, 466.)

As a matter of practical convenience, however, it became the customary practice for the executor or administrator to pay " all necessary expenses of administration out of the trust funds, if he happens to have sufficient on hand for that purpose, with the understanding that if for any reason, upon the final settlement of his accounts, any item of expenditure thus made shall be disallowed by the surrogate, he will be required to reimburse the

estate therefor." (*Shaffer* v. *Bacon*, 35 App. Div. 248, 251; affd., 161 N. Y. 635.)

This practice received statutory recognition for the first time in the enactment of section 2692 of the Code of Civil Procedure in 1914 (Laws of 1914, chap. 443) which provided that " an executor, administrator, guardian or testamentary trustee may pay from the funds or estate in his hands, from time to time, as shall be necessary, his legal and proper expenses of administration necessarily incurred by him, including the reasonable expense of obtaining and continuing his bond and the reasonable counsel fees necessarily incurred in the administration of the estate. Such expenses and disbursements shall be set forth in his account when filed, and settled by the surrogate."

The provisions of this enactment have been continued unchanged in section 222 of the Surrogate's Court Act.

The legislative purpose in this legislation is stated in the note of the revisers, as follows: " In theory now many payments of such character must be made from personal funds, although in practice they are not. It is better to authorize the common practice."

All which the section authorizes, however, is the payment from estate funds of the " *legal and proper* expenses of administration *necessarily incurred* by " the fiduciary. In so far as estate assets are used by him for a purpose not coming within this description, such act obviously amounts to a diversion thereof for the solution of an obligation which is exclusively his own, which diversion he must repair under penalty not only of pecuniary enforcement but of personal incarceration. The determination of the legality, propriety and necessity of the expenditure may be made by the fiduciary in the first instance, but such evaluation is at his peril and may be rendered tortious from its inception by a subsequent decision of the surrogate disallowing the disbursement on the judicial settlement of his accounts.

The only alteration of previous conceptions, if it may be so dignified, is by the tentative authorization subject to the express condition of subsequent approval to utilize funds of the estate in solution of his own obligation. It follows, therefore, that if subsequent approval is withheld, in whole or in part, the pertinent determination is merely one to the effect that the fiduciary has in fact diverted funds of the estate for the solution of his own personal obligations and the object of such diversion is not a matter of interest to the estate unless the representative is unable personally to repair it, and the circumstances of the case are such as to justify pursuit of the recipient on the theory of a tracing of trust funds.

In any event, once the personal liability of the fiduciary has been determined and satisfied, all interest of the estate in the diversion of funds ceases and any rights which may have existed for a recovery from the recipient are no longer its property but that of the fiduciary himself, not by reason of his subrogation thereto, but because the transaction was without justification in its inception and was his own personal affair from the start.

So far as the record discloses, that is the situation in the present case. The administratrix, as an individual, entered into a new transaction with the attorneys whom she employed. To the extent that she overpaid them, such transaction was always her own and never that of the estate although by reason of her diversion of estate funds in the overpayment it might, through its duly authorized representative, have secured restitution of the diverted funds if it had elected so to do. The representative has either repaired such diversion or, if she has not, the claim is still an asset of the administratrix upon which the estate has a primary lien to repair the defalcation.

In the former alternative the only parties in interest are the administratrix in her individual capacity or her receiver in her stead and the attorneys. Since the basis of the obligation is an *inter vivos* transaction in which the estate is not interested, this court possesses no jurisdiction thereof.

In the latter alternative, all rights to recovery are vested in the estate as a quasi entity, the former administratrix possesses no interest therein as an individual and her receiver is unauthorized to and, in fact, does not, seek a recovery on behalf of the estate.

Under the circumstances this court must decline to accept jurisdiction of the proceeding and must remit the petitioner to the Supreme Court for any rights which he may deem himself to possess.

The proceeding is accordingly dismissed, with costs.

Enter decree on notice in conformity herewith.