In the Matter of the Estate of WILLIAM H. ZIEGLER, Deceased.

Surrogate's Court, Kings County, March 23, 1939.

*Daniel Arvan*, attorney *pro se*, petitioner.

*Wayland & Bernard*, for Agnes B. Ziegler, individually and as cotrustee, respondent.

*Leon G. Godley*, for Charles F. Ziegler, individually and as cotrustee, respondent.

*Lewis S. Bowdish*, for Louise Z. Bernard, individually and as cotrustee, respondent.

*Thomas G. Prioleau*, for Jeanne Blow and Robert Bernard, contingent remaindermen.

*William H. Ziegler, II*, attorney *pro se*, contingent remainderman.

WINGATE, S.   The considerable and increasing practice of attorneys for individual legatees, distributees and creditors of estates

of instituting legally unjustified proceedings under section 231-a of the Surrogate's Court Act in an effort to secure allowances from the general assets of estates in payment for the services which they have rendered on the personal retainer of their clients imposes an improper burden of expense upon these estates and constitutes an unwarranted encroachment upon the time of the court which might better be devoted to the hearing and determination of other litigation.

Whereas applications of this variety are of almost daily occurrence in this and other courts, less than one per cent of their number disclose a situation in which there is the remotest possibility that the desired result would be proper of attainment. In the sixteen years during which section 231-a has been a part of the Surrogate's Court Act, only some half dozen reported decisions have awarded compensation to attorneys for non-fiduciary litigants from the general assets of estates, yet in this court alone the number of applications of this variety per month averages approximately three times this total.

It is naturally impossible to generalize respecting the cause for this considerable influx of unfounded litigation. It may be due to wishful thinking by the moving parties, to a failure to analyze the legal bases warranting an award of this variety, to a desire to increase the demonstration of proceedings indulged in for the purported benefit of the client with an eye to the ultimate account to be rendered or to some other reason which escapes the imagination of the court. Whatever the cause, however, the practice must be discouraged. Hitherto this court has been lenient in the imposition of discretionary costs upon unsuccessful applicants of this variety, but in the interest of the conservation of the assets of the estates affected, is of the opinion that the imposition of costs in unsuccessful proceedings of this variety should become the rule rather than the exception.

This court has heretofore, in several instances, taken occasion to explain the basic theory upon which, in certain rare situations, the legal expenses of a non-fiduciary litigant may be made payable from the estate as a whole. (See *Matter of Hirsch*, 154 Misc. 736: *Matter of Smith*, 167 id. 95; *Matter of Geller*, Id. 578; *Matter of Valverde*, 169 id. 121.)

The syllogism underlying any such allowance is predicated on four legal truisms. The *first* is that the fiduciary owes a duty to the estate and its distributees to do a number of acts requisite for its proper and orderly administration, which acts begin with the probate of the will or the securing of letters of administration, continue with the collection and marshalling of the assets which belonged to the decedent during his lifetime and terminate with

the accounting in respect of his acts and the distribution of the assets or their proceeds to the persons who are legally entitled to receive them.

*Second,* if the fiduciary performs the duties thus imposed upon him by law, he is entitled to indemnification from the assets of the estate for all reasonable and proper expenses necessarily incurred by him in the process.

*Third,* if the fiduciary neglects to perform any of the duties which are thus legally imposed upon him for the proper administration of the affairs of the estate after his dereliction has been brought to his attention and he has been accorded reasonable opportunity to remedy his neglect, any other interested party may be authorized to perform such duty in his stead.

*Fourth,* if such other interested party as the virtual substitute for the legal fiduciary, actually successfully performs such unreasonably neglected fiduciary duty he may, in the discretion of the court, be subrogated to the right of indemnification for attendant expense which the fiduciary would have possessed had he himself performed the act in question.

Thought in respect of the situation has been clouded by the occasional observation that such right of subrogation accrues where the efforts of the non-fiduciary interested party have resulted in bringing " new assets into the estate." It is true that in several instances this act has been the basis for the indemnification, but all of such cases have been where the act was in the nature of a successful discovery proceeding in which assets belonging to the decedent, which were held by some third party, have been wrested from such third party and added to the estate assets and thus made subject to distribution to the creditors or distributees of the decedent when otherwise such would not have been the case.

The facts of the present application furnish an apt illustration of the frequently urged misconception in this regard. Certain of the trustees of these trusts substantially neglected the duties of their office and employed and presumably paid an attorney to do the ordinary administrative work of the trust. They also assented to the payment to such attorneys of excessive sums for ordinary legal work in connection with the trust securities.

The present applicant as attorney for an interested party objected to the credits set up for these disbursements by the trustees in their accounts, and such credits were disallowed to the extent of over $6,000. This attorney now seeks payment for the services rendered in this regard on the theory that by his activity " the trust estates shall be increased by the sum of $6,711.74." This statement demonstrated merely his misconception of the entire

situation. There has been no increase of the assets; they have simply not been decreased by unlawful charges.

The contracts which the trustees made with the attorney were their own and were not binding upon the estate. (*O'Brien* v. *Jackson*, 167 N. Y. 31, 33; *Austin* v. *Munro*, 47 id. 360, 366; *Matter of Neng*, 227 id. 264, 270; *Dodd* v. *Anderson*, 197 id. 466, 471; *Smith* v. *Peyrot*, 201 id. 210, 215; *Ferrin* v. *Myrick*, 41 id. 315, 324; *Matter of Van Slooten* v. *Dodge*, 145 id. 327, 332; *Parker* v. *Day*, 155 id. 383, 387.) They incurred certain expenses as individuals. If determined to be necessary and proper, they were entitled to be indemnified therefor from the assets of the estate. (*Corn Exchange Bank Trust Co.* v. *Bankers Trust Co.*, 268 N. Y. 224, 227; *Matter of Maxwell*, 218 id. 88, 90; *Downing* v. *Marshall*, 37 id. 380, 388; *Wetmore* v. *Parker*, 52 id. 450, 466.)

In so far, if at all, as these sums had actually been paid from the funds of the estate prior to the accounting, they were in effect borrowed by the trustees subject to the condition that such borrowing constituted a devastavit if the expenditure was subsequently determined to be improper as an estate charge. (*Shaffer* v. *Bacon*, 35 App. Div. 248, 251; affd., 161 N. Y. 635; *Matter of Rosenberg*, 169 Misc. 92, 96.)

In substantial effect, the trustees asserted a right, as indemnification for expense, to certain moneys in their hands which, in part, constituted funds of which the client of the present applicant was the beneficial owner. Through the efforts of his attorney, this beneficial owner was able to establish his own prior rights to the money. It was a private controversy between him and the trustees as individuals.

The mere fact that the determination of this private controversy resulted in the conferring of a collateral benefit upon third parties by whom the attorney was not retained is insufficient to permit this court in substance to enforce a retainer *in invitum* upon them through the medium of taking some of their money to pay for the services which he rendered on the retainer by his actual client. (*Matter of Loomis*, 273 N. Y. 76, 82: *Nieman-Irving & Co.* v. *Lazenby*, 263 id. 91, 94; *Matter of Attorney-General* v. *North American Life Ins. Co.*, 91 id. 57, 62; *Matter of Frame*, 162 Misc. 34, 35; *Matter of Curley*, 161 id. 391, 397: *Matter of Winburn*, 160 id. 49, 52.)

The proceeding will accordingly be dismissed, with costs.

Enter decree on notice in conformity herewith.