**ESTATE of David SMITH, Deceased, et al., Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 133, Docket 74–1617.**

United States Court of Appeals, Second Circuit.

Argued Nov. 4, 1974.

Decided Feb. 4, 1975.

George G. Wolf, Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, and William S. Estabrook, Attys. Tax Div., Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

M. Bernard Aidinoff, New York City (Sullivan & Cromwell, Ira M. Lowe, Henry Christensen, III, and Laurie L. Malman, New York City, on the brief), for petitioners-appellants.

Before KAUFMAN, Chief Judge, and ANDERSON and MULLIGAN, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

David Smith, a sculptor, died on May 23, 1965 possessed of 425 pieces of sculpture, which he had created, along with cash and other liquid assets totalling $210,647.08. His will, dated January 21, 1965, was admitted to probate by the Surrogate's Court of Warren County, New York, and Ira M. Lowe, Clement Greenberg, and Robert Motherwell were duly appointed and qualified as co-executors.

Had the large number of artistic works which he left at his death been generally known and had all of these works been immediately placed on the market they would have brought substantially less than could be received by feeding them slowly into the market over a period of time. Shortly after Smith's death, therefore, the executors began an orderly process of gradual liquidation of the Estate's holdings of sculpture through Marlborough-Gerson Galleries, which was entitled to a commission on each piece of sculpture sold in accordance with a 1963 contract that was subsequently renewed by the executors in 1968 and 1970. From May 23, 1965 through April 30, 1970, an aggregate of $1,187,144.67 in commissions was paid to Marlborough and allowed by the Surrogate's Court. Further commissions of $396,400 were paid by the Estate to Marlborough from May 1, 1970 through August 21, 1973 and the Surrogate's Court allowed these as well.

A federal estate tax return was filed on August 24, 1966 and a deficiency was agreed upon and paid on July 10, 1968. On August 7, 1969, the Commissioner of Internal Revenue (Commissioner) issued a notice of deficiency for $2,444,629.17 based upon a valuation of Smith's estate of $5,256,918 and a disallowance of any payments of commissions in excess of $289,661.65.

Upon a petition by the executors for redetermination, the Tax Court reduced the value of the estate to $2,700,000, and no appeal has been taken from this appraisal. From the time of Smith's death to August 21, 1973, the executors paid to the Galleries, with the approval of the

Surrogate's Court[1], the total sum of $1,583,544.67 in commissions for sales of Smith's works, but the Tax Court allowed the Estate only $750,447.74 as deductions for sales commissions under § 2053(a)[2] of the Internal Revenue Code of 1954 (26 U.S.C. § 2053(a)) and Treas. Reg. § 20.2053–3.[3] This allowance was the exact amount necessary to pay the decedent's debts, the expenses of administration, and taxes as finally adjudicated.

■ Appellants first argue that, given the speculative and volatile market value of the sculptures, which were the Estate's major assets, they were under a duty to liquidate sufficient of these assets as were necessary adequately to preserve their value, provide for debts, anticipated administration expenses and taxes of the Estate and diversify properly the Estate's investments. In particular, they claim to have been put on notice by the Commissioner's Notice of Deficiency dated August 7, 1969 that they had to be prepared to meet a contingent liability of $2,444,629.17 in additional federal estate taxes and $570,193.23 in additional New York estate taxes, and

1. Section 222 of the New York Surrogate's Court Act, in effect at the time of decedent's death, provided as follows:

   "§ 222. Payment of expenses incurred by representative.

   An executor, administrator, guardian or testamentary trustee may pay from the funds or estate in his hands, from time to time, as shall be necessary, his legal and proper expenses of administration necessarily incurred by him, including the reasonable expense of obtaining and continuing his bond and the reasonable counsel fees necessarily incurred in the administration of the estate. Such expenses and disbursements shall be set forth in his account when filed, and settled by the surrogate."

   § 222 was succeeded as of September 1, 1967, more than two years after decedent's death, by § 11–1.1(b)(23) of the New York Estates, Powers and Trusts Law (McKinney's Consol. Laws, c. 17–b, 1967) (renumbered as of June 22, 1973 as 11–1.1(b)(22)), which provides that a fiduciary is authorized:

   "(23) In addition to those expenses specifically provided for in this paragraph, to pay all other reasonable and proper expenses of administration from the property of the estate or trust, including the reasonable expense of obtaining and continuing his bond and any reasonable counsel fees he may necessarily incur."

   The revisers' notes state that subparagraph (b)(23) is intended to incorporate the substance of § 222 of the Surrogate's Court Act.

2. Section 2053 of the Internal Revenue Code of 1954 (26 U.S.C. § 2053(a)), provides as follows:

   "(a) General rule—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
   (1) for funeral expenses
   (2) for administration expenses,
   (3) for claims against the estate, and
   (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,
   as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered."

3. Treas.Reg. § 20.2053–3 (1958), as amended by T.D. 6826, 30 F.R. 7708, June 15, 1965, provides in relevant part:

   "§ 20.2053–3 Deduction for expenses of administering estate.
   (a) In general. The amounts deductible from a decedent's gross estate as 'administration expenses' of the first category (see paragraphs (a) and (c) of § 20.2053–1) are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee, whether the trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions
   .   .   ..

   *   *   *   *   *   *

   (d) Miscellaneous administration expenses
   .   .   .
   (2) Expenses for selling property of the estate are deductible if the sale is necessary in order to pay the decedent's debts, expenses of administration, or taxes, to preserve the estate, or to effect distribution
   .   .   .."

that sales to meet these obligations alone would have incurred more in commissions than the entire $1,602,644.67 which they in fact paid and now seek as a deduction. The disputed sale expenses, they contend, were therefore incurred as necessary steps in the course of their administration of the Estate and are deductible under Treas.Reg. § 20.2053–3(d)(2). The evidence indicates, however, that all of the expenses disputed by the Commissioner were incurred *before* the notice of deficiency was issued, all commissions incurred subsequent to the notice of deficiency having been allowed. In fact, the $579,323.30 in cash needed to pay the expenses, debts, and taxes incurred by the Estate to April 30, 1970 had been realized by the Estate from the sale of sculpture by February 28, 1967. Under these circumstances the Tax Court's determination that no more than $750,447.74 in sales commissions were necessary either to preserve the estate or pay debts, administrative expenses and taxes is not clearly erroneous. *See* Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

Appellants further contend that the allowance by the New York Surrogate's Court of all of the sales commissions as administrative expenses is determinative of their deductibility under § 2053(a) of the Internal Revenue Code of 1954 and Treas.Reg. § 20.2053–3(d)(2), and that if Treas.Reg. § 2053–3(d)(2) is read to deny a deduction for administration expenses properly allowed by state law, § 20.2053–3(d)(2) is invalid. This argument is inapposite, however, to the facts of the instant case.

Both § 222 of the New York Surrogate's Court Act and Treas.Reg. § 20.-2053–3, like most state laws concerning executors and administrators, require an administrative expense to be "necessary" in order to be allowable. *See* 31 Am. Jur.2d Executors and Administrators §§ 524, 527 (1967); In re Rosenberg's

Estate, 169 Misc. 92, 6 N.Y.S.2d 1009, 1012–1013 (Sur.Ct.1938). Normally, therefore, a Surrogate's court decree approving expenditures by an executor as proper administrative expenses under New York law will be controlling and will not raise questions concerning possible discrepancies between § 2053 of the Internal Revenue Code of 1954 and Treas.Reg. § 20.2053–3(d)(2). *See* Treas. Reg. § 20.2053–1(b)(2) ("The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends."); Dulles v. Johnson, 273 F.2d 362 (2 Cir. 1959), cert. den., 364 U.S. 834, 81 S.Ct. 54, 5 L.Ed.2d 60 (1960); Sussman v. United States, 236 F.Supp. 507 (E.D.N.Y. 1962).

As noted in Pitner v. United States, 388 F.2d 651, 659 (5 Cir. 1967), however, the interest of the federal government in taxing the passage of property from a decedent's estate to individual beneficiaries or to a trustee will not always completely or accurately be reflected in a state's interests in supervising the fiduciary responsibilities of executors. In the present case, appellants' claims for administration expenses were not contested in the Surrogate's Court and there is some question as to whether some of these expenses were in fact incurred for the benefit of the estate in accordance with the general purpose of § 2053 rather than for the benefit of individual beneficiaries. *See* Commercial Nat. Bank of Charlotte v. United States, 196 F.2d 182, 183–184 (4 Cir. 1952); *Cf.* United States v. Stapf, 375 U.S. 118, 130–131, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963), reh. den., 375 U.S. 981, 84 S.Ct. 477, 11 L.Ed.2d 428 (1964). In such circumstances, the federal courts cannot be precluded from reexamining a lower state court's allowance of administration expenses[4] to determine whether

---

4. Such administrative expenses must be the "type intended to be deductible" (United States v. Stapf, 375 U.S. 118, 130, 84 S.Ct. 248, 11 L.Ed.2d 195 (1964)), ultimately a question of federal law. See Pitner v. United

States, 388 F.2d 651 (5 Cir. 1967). The holding in *Pitner* differs from the interpretation placed upon it by Judge Mulligan in his dissent. The court in that case assumed that the expense deduction was allowable by the

they were in fact necessary to carry out the administration of the estate or merely prudent or advisable in preserving the interests of the beneficiaries. *Cf.* Commissioner v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); Commercial Nat. Bank of Charlotte v. United States, 196 F.2d 182, 185 (4 Cir. 1952); Treas.Reg. § 20.2053–1(b)(2). Viewed from this standpoint, the Tax Court's determination that the additional sales of sculpture were not necessary to preserve the estate or to effect its distribution did not involve a refusal to follow New York law, but rather was the result of a *de novo* inquiry into the factual necessity for these expenditures.

It is, therefore, unnecessary to pass on whether Treas.Reg. § 20.2053–3(d)(2) is invalid if read to deny a deduction properly allowed by state law. As the determination of the Tax Court is not clearly erroneous, it is affirmed.

MULLIGAN, Circuit Judge (dissenting):

I dissent with respect but without reluctance. Section 2053(a) of the Internal Revenue Code provides that in determining a decedent's taxable estate there shall be a deduction from the gross estate of

> such amounts . . . for administration expenses . . . as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

The estate here was administered in the State of New York and the selling commissions at issue here were held to be allowable as proper expenses by the Surrogate of Warren County in several separate accountings. The Code unambiguously provides for their deduction if al-

lowed by the jurisdiction administering the estate and neither the Commissioner of Internal Revenue nor the Tax Court, in my view, can properly reverse the State Court determination. Congress has explicitly left the matter in the hands of the state.

In a case squarely in point, the Sixth Circuit reversed the Tax Court's denial of deductibility, stating:

> By the literal language of § 2053(a), Congress has left the deductibility of administrative expenses to be governed by their chargeability against the assets of the estate under state law. As otherwise stated, Congress has committed to the considered judgment of the states whether a particular expense is allowable as a proper or necessary charge against estate assets. In the situation before us, the expenses were admittedly allowable under Michigan law. They were paid out of probate assets and they were approved in two different accountings filed with the probate court. Hence they are deductible under § 2053(a).

Estate of Park v. Commissioner, 475 F.2d 673, 676 (6th Cir. 1973). *Park* is not alone in holding that the plain meaning of the statute controls and that the Congress intended deductibility to be determined by state law. E. g., Ballance v. United States, 347 F.2d 419, 423 (7th Cir. 1965); Commercial National Bank v. United States, 196 F.2d 182, 185 (4th Cir. 1952); Estate of Louis Sternberger, 18 T.C. 836, 843 (1952), aff'd, 207 F.2d 600 (2d Cir. 1953), rev'd on other grounds, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955); see Dulles v. Johnson, 273 F.2d 362, 369–370 (2d Cir. 1959), cert. denied, 364 U.S. 834, 81 S.Ct. 54, 5 L.Ed.2d 60 (1960).

---

laws of the jurisdiction under which the estate was being administered, and yet held that

> "[i]n the determination of deductibility under section 2053(a)(2), it is not enough that the deduction be allowable under state law. It is necessary as well that the deduction be for an 'administration expense' within the meaning of that term as it is used in the statute, and that the amount sought to be deducted be reasonable under the cir-

cumstances. These are both questions of federal law and establish the outside limits for what may be considered allowable deductions under section 2053(a)(2)." 388 F.2d at 659.

Thus, the Fifth Circuit, as well as the Tax Court, have rejected the proposition that the only requirement for deductibility under Section 2053(a) is the allowability of the expense under state law.

The majority opinion not only ignores *Park* but the Code as well, focusing instead upon Treasury Regulation § 20.-2053–3(d)(2), which provides deductions from gross estates for selling expenses "if the sale is necessary in order to pay the decedent's debts, expenses of administration, or taxes, to preserve the estate, or to effect distribution." As the majority opinion points out, § 222 of the New York Surrogate's Court Act, which was then in effect, similarly provided for the deduction of administration expenses "necessarily" incurred. The majority opines that the state's interest in supervising the fiduciary responsibilities of its executors may not always be compatible with the interest of the federal government in collecting taxes. The obvious answer is that in § 2053(a) of the Code, the Congress decided without any limitation that the state law controlled. If the Regulation by adding the word "necessary" gives the Commissioner of Internal Revenue the authority to review the determination of the New York State Surrogate and interpret what is "necessary" solely from the point of view of the federal taxing power, then the Regulation conflicts with the Code, is contrary to the intent of Congress, and is therefore invalid. E. g., United States v. Calamaro, 354 U.S. 351, 359, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957); Dorfman v. Commissioner, 394 F.2d 651, 655 (2d Cir. 1968).

The majority here states that the Tax Court was not refusing to follow New York law but rather was making a *de novo* inquiry into the question of the factual necessity of these expenditures, and thus it is "unnecessary to pass on" the argument that the Regulation conflicts with the Code. I cannot agree that the issue can be so circumvented. The laws of the state are interpreted and administered by the courts of the state and not by the Tax Court of the United States. Pitner v. United States, 388 F.2d 651 (5th Cir. 1967), relied upon by the majority, is totally unlike the case before us. There had been no formal probate of the decedent's estate in that case and no Texas court had made any ruling which would bind the Tax Court. The Tax Court found no Texas statute or case in point, hence the necessary reliance on federal law.[1]

The functioning of the I.R.S. or the Tax Court as a surrogate Surrogate is particularly unfortunate here. While the commissions paid were substantial, we must bear in mind that the artist had difficulty in selling his works while alive and, two years before he died, of necessity entered into a 33⅓% commission arrangement with a gallery for a five-year period. During the last 25 years of his life he had sold only 75 pieces of his sculpture and died owning 425 pieces, 185 of which were more than seven feet high. *Ars longa, vita brevis.* This art

---

1. The other cases cited in the majority opinion are either distinguishable or in fact helpful to the appellant. Commissioner v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) involved the question of whether a federal court or agency in a federal tax controversy is conclusively bound by a state trial court adjudication regarding the characterization of property interests. There was no act of Congress there ceding jurisdiction to the state but only the report of a Senate Committee recommending that "proper regard," not finality, should be given to the interpretation of a will by state courts. Id. at 464, 87 S.Ct. 1776. Commercial Nat'l Bank v. United States, *supra*, did deal with the question of whether attorneys' fees were administrative expenses under the old Internal Revenue Code but found that the state court had never passed upon the question since the fees were fixed by stipulation between the parties and the issue was intentionally excluded from the judgment of the state court. The position of the United States, namely, that even if the fees had been assessed by the state court they were not deductible for federal tax purposes, was therefore not reached but in dicta was described by the court as "doubtful." The court cited Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 158, 83 L.Ed. 119 (1938) for the proposition that it is the will of Congress which controls in interpreting a tax statute. "Congress establishes its own criteria and the state law may control only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law." I submit that this was the case here.

Dulles v. Johnson, *supra*, and Sussman v. United States, 236 F.Supp. 507 (E.D.N.Y.1962) both followed the state court's determination of administration-expense deductions.

work represented approximately 93% of the value of his total estate. Smith was an abstract non-representational sculptor who worked with steel and other metals, and his works required substantial space for proper exhibition. Faced with an estate so constituted and recognizing the necessity of liquidation to satisfy estate taxes which could not be determined with any degree of certainty in view of the unpredictable and volatile nature of artistic tastes and fashions, the fiduciaries liquidated some of the sculpture in the estate. The determination below that they were improvident in disposing of the sculptures or that it was done for the benefit of the beneficiaries rather than the estate is made only with the infallible acuity of hindsight. The behavior of testamentary fiduciaries is more appropriately gauged by the surrogate rather than by federal tax authorities.

Since I believe there was a failure to recognize the command of the Code, I would characterize the error here as one of law and not of fact, which would make the "clearly erroneous" test set by the majority inapplicable. Trust of Bingham v. Commissioner, 325 U.S. 365, 371, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945). The five dissenting tax court judges were, in my view, correct in finding that the determination of the New York Surrogate as to deductibility was binding.