T.C. Memo. 2010-158

UNITED STATES TAX COURT

CONSOLIDATED INVESTORS GROUP, STEVEN G. LUCA,
TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23703-06.                    Filed July 22, 2010.

Robert P. Ellis, for petitioner.

John M. Tkacik, Jr., for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge:  This case is before the Court on petitioner's motion for award of administrative and litigation costs pursuant to section 7430 and Rule 231.[1]  Neither party

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax
(continued...)

requested a hearing on this matter, and we conclude that a hearing is not necessary.  See Rule 232(a)(2).  Accordingly, we decide petitioner's motion on the basis of the parties' submissions and the existing record.  See Rule 232(a)(1).  The portions of our opinion on the merits of this case in Consol. Investors Group v. Commissioner, T.C. Memo. 2009-290 (Consolidated Investors I), that are relevant to our disposition of this motion are incorporated herein by this reference.

After concessions,[2] the issues for decision are whether: (1) Respondent's positions in Consolidated Investors I were substantially justified; (2) petitioner satisfies the net worth requirements as provided by law; and (3) petitioner's litigation and administrative costs are reasonable.

Background

Pursuant to a settlement agreement, the Ohio Transportation Commission (OTC) paid petitioner $950,000 for the taking of approximately 12.4 acres of petitioner's property and for related damages.[3]  Petitioner treated the transfer of the property as a

_____

[1](...continued)
Court Rules of Practice and Procedure.

[2]  Respondent concedes that petitioner:  (1) Substantially prevailed with respect to the amount in controversy or the most significant issues presented; (2) exhausted administrative remedies; and (3) did not unreasonably protract the Court proceedings.

[3]  Petitioner owned approximately 147 acres of real estate along State Route 58 in Lorain County, Ohio.  The OTC determined
(continued...)

part-gift/part-sale transaction and claimed a $641,000 charitable contribution deduction on its 2003 Form 1065, U.S. Return of Partnership Income. Petitioner calculated the deduction by subtracting the amount it received from the OTC ($950,000) from the fair market value of the property as determined by its appraiser ($1,591,000).

Respondent disallowed the charitable contribution deduction and has consistently maintained the following positions throughout the administrative proceeding and the subsequent litigation: (1) The fair market value of the property was equal to the negotiated settlement price of $950,000 (i.e., $641,000 less than the value petitioner reported); (2) petitioner did not have the requisite donative intent under section 170 for the transfer of property to qualify as a charitable contribution; and (3) petitioner failed to properly substantiate its claimed charitable contribution deduction.[4]

---

[3](...continued)
that it was necessary to acquire a portion of petitioner's real estate to construct a right-of-way for an interchange at State Route 58. Following unsuccessful negotiations to acquire the affected real estate, the OTC filed a "Complaint For Appropriation For Public Road Project, Quick Take Eminent Domain."

[4] Alternatively, respondent argued that if petitioner was entitled to a charitable contribution deduction, sec. 1011(b) required petitioner to determine its capital gain by allocating the adjusted basis ratably between the sale and gift portions of the transaction. Because petitioner was not the prevailing party on this issue in Consolidated Investors I, petitioner is not
(continued...)

In our opinion in Consolidated Investors I issued on December 16, 2009, we held that petitioner demonstrated that the fair market value of the property was $1,591,000, that it possessed the requisite donative intent when it transferred the property to the OTC, and that it substantiated its deduction. Accordingly, we allowed the $641,000 charitable contribution deduction. Petitioner now contends that it is entitled to recover administrative and litigation costs.

## Discussion

Section 7430 provides for the award of administrative and litigation costs to a taxpayer in a court proceeding brought against the United States involving the determination of any tax, interest, or penalty pursuant to the Internal Revenue Code. An award of litigation costs may be made where the taxpayer: (1) Is the "prevailing party"; (2) exhausted available administrative remedies; (3) did not unreasonably protract the proceeding; and (4) claimed reasonable administrative and litigation costs. Sec. 7430(a), (b)(1), (3), and (c). These requirements are conjunctive, and failure to satisfy any one will preclude an award of costs to petitioner. See Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

---

⁴(...continued)
entitled to recover administrative or litigation costs attributable to this issue. See sec. 7430.

I. <u>Prevailing Party</u>

To be a "prevailing party":  (1) The taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented; and (2) at the time the petition in the case is filed, the taxpayer must meet the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B).  Sec. 7430(c)(4)(A).  A taxpayer, however, will not be treated as the prevailing party if the Commissioner establishes that the Commissioner's position was substantially justified.  Sec. 7430(c)(4)(B).  For purposes of the court proceedings, the Commissioner's position is that which was set forth in the answer.  Sec. 7430(c)(7)(A); <u>Huffman v. Commissioner</u>, 978 F.2d 1139, 1147-1148 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144; <u>Maggie Mgmt. Co. v. Commissioner</u>, 108 T.C. 430, 442 (1997).  The Commissioner's position in an administrative proceeding is the position taken as of the earlier of:  (1) The date of receipt by the taxpayer of the notice of decision of the Appeals Office; or (2) the date of the notice of deficiency.  Sec. 7430(c)(7)(B).

Respondent concedes that petitioner substantially prevailed with respect to the amount in controversy or the most significant issue or issues presented.  As previously stated, however, respondent argues that petitioner cannot be a prevailing party because respondent's positions were substantially justified.

A position is substantially justified if it is justified to a degree that could satisfy a reasonable person and has a reasonable basis in both fact and law. Pierce v. Underwood, 487 U.S. 552, 565 (1988); Huffman v. Commissioner, supra at 1147; Swanson v. Commissioner, 106 T.C. 76, 86 (1996). The determination of reasonableness is based on all of the facts and circumstances surrounding the proceeding and the legal precedents relating to the case. Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 694-695 (1990). A position has a reasonable basis in fact if there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Pierce v. Underwood, supra at 565. A position has a reasonable basis in law if legal precedent substantially supports the Commissioner's position given the facts available to the Commissioner. Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 688. Determining the reasonableness of the Commissioner's position requires considering what the Commissioner knew at the time he took his position. Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). The justification for each of the Commissioner's positions must be independently determined. See Swanson v. Commissioner, supra at 92, 97.

The fact that the Commissioner loses on the merits or concedes the case does not establish that a position was not

substantially justified; however, it is a factor to be considered. Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part and revd. in part on another ground 43 F.3d 172 (5th Cir. 1995).

According to the positions taken by respondent in the administrative and judicial proceedings, petitioner was not entitled to a charitable contribution deduction because: (1) The fair market value of the property was equal to the $950,000 settlement price; (2) petitioner lacked donative intent when it transferred the property to the OTC; and (3) petitioner did not comply with the substantiation requirements. In deciding whether petitioner is entitled to administrative and litigation costs, we must determine whether respondent's positions with respect to valuation, donative intent, and substantiation were substantially justified.

A. Valuation

To establish that respondent's valuation position was substantially justified, he must demonstrate that he was reasonable in adopting his expert's analysis. See Smith v. United States, 850 F.2d 242, 246 (5th Cir. 1988); Estate of Dailey v. Commissioner, T.C. Memo. 2002-301. In making this determination, we consider the facts of the case, the nature of the asset that was valued, the expert's qualifications, the soundness of the valuation methods, the reliability of the

expert's factual assumptions, and the persuasiveness of the reasoning supporting the expert's opinion. Fair v. Commissioner, T.C. Memo. 1994-602. The more difficult it is to appraise property, the more leeway we give before concluding that a party's position was not substantially justified. Id. For purposes of section 7430, our role is not to decide whether a particular expert was correct but rather whether respondent's overall position, based on the expert report, was reasonable. Hursh v. Commissioner, T.C. Memo. 1990-184.

Before securing the advice of an expert, respondent reviewed conflicting appraisals that valued the property at $771,000 and $1,591,000.[5] Because of the disparities between the appraisals, the examining agent requested advice from a valuation specialist in respondent's general engineering group, who determined that the fair market value of the property was the negotiated settlement price of $950,000. Respondent subsequently engaged Richard G. Racek (Mr. Racek), an experienced appraiser with an M.A.I. designation, to appraise petitioner's property. Mr. Racek used the generally accepted sales comparison method in concluding that the fair market value of the property was $953,671. In

---

[5] Respondent reviewed the appraisal report prepared by Wesley Baker (Mr. Baker), of Wesley Baker & Associates, whom the OTC hired to appraise the property during its negotiations with petitioner. Mr. Baker's appraisal concluded that the fair market value of the property was $771,000. Respondent also reviewed the appraisal prepared on petitioner's behalf by Richard D. Masters (Mr. Masters), of Masters & Associates, which listed the fair market value of the property as $1,591,000.

doing so, Mr. Racek evaluated the purchase prices of comparable commercial and residential real estate and made adjustments to reflect differences including land size, location, date of sale, inflation, and commercial exposure. Although the Court identified flaws in Mr. Racek's analysis,[6] four appraisers determined a wide range of values for the property at issue in the underlying case (e.g., $771,000, $953,671, $1,591,000, and $2,875,726).[7] This fact highlights the difficulty the experts faced in appraising the property and the inherent element of subjectivity in their respective analyses. See Smith v. United States, supra at 246 ("There is inevitably a subjective aspect to the shaping of any appraisal"); Estate of Smith v. Commissioner, 57 T.C. 650, 655 (1972) ("Valuation has been consistently recognized as an inherently imprecise process."), affd. 510 F.2d 479 (2d Cir. 1975).

---

[6] In Consolidated Investors I, we concluded that the appraisal prepared by Mr. Masters, petitioner's expert, was more thorough because he included more sales of comparable properties in his analysis, considered more factors that could potentially affect the sale prices of comparable properties, and explained and disclosed the adjustments he made to the sale prices and the weight he awarded to particular sales. While Mr. Racek used nearly as many sales of comparable properties, he did not explain the adjustments he made to the sale prices or disclose the amounts of the adjustments.

[7] In addition to the appraisals prepared by Messrs. Baker, Racek, and Masters, discussed supra, Jay Arthur Berk III prepared an appraisal report on petitioner's behalf that valued the property at $2,875,726.

Given Mr. Racek's level of expertise and experience, his use of generally accepted valuation techniques, the difficult nature of valuing the property, and the substantial disparities in the experts' appraisals, we find that respondent's reliance on Mr. Racek was reasonable. Accordingly, we find that respondent's valuation position was substantially justified.

B.  Donative Intent

Respondent maintained that petitioner did not have the requisite donative intent under section 170 for the transfer of property to qualify as a charitable contribution. In doing so, respondent argued that petitioner's characterization of the transaction was not determinative; rather, an objective inquiry must be made in deciding whether a gift has been made. See Hernandez v. Commissioner, 490 U.S. 680, 690 (1989); Commissioner v. Duberstein, 363 U.S. 278, 288 (1960).

Respondent identified various factors that he viewed as indicative of a commercial transaction, not a charitable contribution. For example, petitioner purchased the property for investment purposes, aggressively negotiated the transaction with the OTC, and had part of the property rezoned from residential/agricultural to commercial in an effort to increase the value of the property.

Respondent also emphasizes that while the settlement agreement acknowledged that petitioner would file Form 8283,

Noncash Charitable Contributions, the OTC insisted on an indemnification clause that would absolve the OTC from liability if the Internal Revenue Service subsequently challenged the characterization of the transaction. Finally, respondent points out that at the time the OTC signed the donee acknowledgment section of Form 8283, the form did not contain information regarding the appraised fair market value of the property. According to respondent, these facts support his position that the charitable contribution was an afterthought in an otherwise commercial transaction.

Two OTC employees who were directly involved in the negotiations with petitioner testified in a manner that was consistent with respondent's position. Joseph DiSantis, the right-of-way coordinator, claimed that the prospect of a part-gift/part-sale transaction was mentioned, but it was never seriously considered. Noel Tsevdos, the OTC's general counsel, also testified that a potential gift was not discussed during the settlement negotiations until after the parties reached an agreement on the purchase price.

Relying on S. Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 604 (1980), respondent argued that petitioner's inability to obtain a higher price during negotiations did not transform an otherwise commercial transaction between adverse parties following arm's-length negotiations into a charitable

contribution.  Respondent, citing <u>Swetland v. Curry</u>, 188 F.2d 841
(6th Cir. 1951), further argued that a transfer of property
pursuant to an appropriation proceeding or "Quick Take" was
against the will of the owner and therefore petitioner lacked the
requisite donative intent when it transferred the property to the
OTC.

In deciding whether petitioner intended to make a gift to
the OTC, the Court had to determine the credibility of the
witnesses and interpret inconclusive documentary evidence[8] in
view of the surrounding facts and circumstances.  In doing so, we
assigned great weight to the testimony of petitioner's witness,
Steve Luca, who credibly testified that petitioner intended to
donate a portion of the property to the OTC.  We also found that
Mr. Luca's straightforward testimony was consistent with other
evidence including written correspondence between petitioner and

---

[8] Petitioner sent three letters to the OTC between July
2001 and July 2002 that expressed its support for the OTC's
activities and introduced the possibility of a part-gift/part-
sale transaction.  Respondent argued that the letters failed to
memorialize specific details regarding the purported gift.
Petitioner's letter dated July 25, 2001, to the OTC contained the
following statement:  "Since 1990 our organization has been a
strong advocate of the OTC and its activities.  Currently we
continue to support your activities with caution."  On Aug. 28,
2001, petitioner sent the OTC a letter that contained the
following statement:  "In conclusion, our organization consists
of various gentlemen of the community that continue to support
the activities of the OTC."  On July 17, 2002, petitioner wrote
the OTC explaining that it would consider a part-gift/part-sale
transaction of the property and stated:  "Since approximately
1990, our organization has been a strong advocate of the OTC and
its activities."

the OTC.  We gave little weight to the testimony of the OTC
employees and found their responses evasive and argumentative.
Therefore, we concluded that petitioner possessed the requisite
donative intent when it transferred the property to the OTC.

On the basis of the evidence, however, we hold that it was
reasonable for respondent to believe the partnership lacked
donative intent.  Furthermore, we find that respondent's legal
positions were substantially supported by legal precedent given
the facts available.  Accordingly, we find that respondent's
position that petitioner lacked donative intent was substantially
justified.

C.  Substantiation

Respondent argued that petitioner failed to properly
substantiate its deduction with a "qualified appraisal" because
the appraisals it submitted were untimely and lacked required
information.[9]  As a factual matter, respondent was correct that
petitioner's appraisals were not prepared within the requisite
60-day period, did not show the date of contribution or the fair
market value of the property on that date, and did not contain a

---

[9]  A qualified appraisal is made not earlier than 60 days
before the date of contribution of the appraised property but not
later than the due date of the return on which a deduction is
first claimed under sec. 170.  Sec. 1.170A-13(c)(3)(i)(A), Income
Tax Regs.  The qualified appraisal must include, inter alia, the
date of contribution to the donee, a statement that the appraisal
was prepared for income tax purposes, and the fair market value
of the appraised property on the date of the contribution.  Sec.
1.170A-13(c)(3)(ii)(C), (G), (I), Income Tax Regs.

statement indicating that the reports were prepared for income tax purposes. Accordingly, petitioner did not strictly comply with the substantiation regulations. As we stated in Consolidated Investors I, however, substantial rather than literal compliance may be sufficient to substantiate a charitable contribution deduction in certain instances. See Bond v. Commissioner, 100 T.C. 32 (1993).

The fact that we decided in Consolidated Investors I that petitioner substantially complied with the regulation does not cause respondent's position to be unreasonable. See Fair v. Commissioner, T.C. Memo. 1994-602. Respondent identified what he perceived to be material deficiencies in petitioner's appraisals, leading him to conclude that petitioner did not substantially comply with the regulations. Though we concluded in Consolidated Investors I that petitioner's errors were immaterial, respondent's position throughout the administrative proceeding and the subsequent litigation had a reasonable basis in the regulations and applicable legal precedent given the facts available. Accordingly, we find that respondent's position was substantially justified.

II. Conclusion

We conclude that respondent has established that his positions were substantially justified at both the administrative and litigation levels because they were sufficiently supported by

the facts and circumstances of the case and the existing legal precedent.  Thus, petitioner was not the prevailing party with respect to any of the issues and is not entitled to an award of administrative and litigation costs.  Having concluded that petitioner is not the prevailing party under section 7430, the remaining issues are moot.  In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered under Rule 155</u>.